[No. G022844. Fourth Dist., Div. Three. July 31, 1998.]

FRANK C. WRIGHT, Plaintiff and Appellant, v.
PHYLLIS RIPLEY et al., Defendants and Respondents.

## COUNSEL

Walter Greene, Jr., for Plaintiff and Appellant.

Hollins, Schechter & Feinstein and Jack H. Snyder for Defendants and Respondents.

## OPINION

**BEDSWORTH, J.**—Frank C. Wright sued Phyllis Ripley and Fire Insurance Exchange (Fire)[1] for malicious prosecution. Defendants moved for judgment on the pleadings on the basis of collateral estoppel. They contended the issue of "malice" had been conclusively determined in their favor in the underlying proceeding because Wright's motion for sanctions under Code of Civil Procedure section 128.5 was denied on the ground that "bad faith" was not established. The trial court agreed and granted the motion. We conclude that issues resolved on a routine sanction motion are not entitled to preclusive effect in a later action for malicious prosecution and therefore reverse the judgment.

This case has a tortuous history, which is recounted in detail in the briefs. For our purposes, it is sufficient to explain that Ripley was sued in a personal injury case and hired Wright to defend her. Ripley's defense was tendered to Fire, her insurer under a homeowners policy, but there was some

---

[1]Wright named "Farmers Insurance Group" as a defendant, in addition to Ripley and Fire Insurance Exchange. Moreover, throughout his appellant's opening brief, Wright refers to Ripley's insurer only as "Farmers." However, the record reveals no involvement by Farmers, as distinct from Fire, in either the underlying case or this malicious prosecution case. The motion for judgment on the pleadings was brought by Ripley and Fire, and the judgment appealed from was entered in favor of Ripley and Fire.

delay before Fire agreed to undertake Ripley's defense and pay Wright to act as *Cumis* counsel (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].). By that time, Ripley and Wright had already agreed with the plaintiff to submit the matter to binding arbitration.

At the request of Fire, Wright filed a motion to cancel the binding arbitration and restore the case to the civil active list. The motion was denied the day before the arbitration was scheduled to commence, and Wright filed an immediate appeal. He also informed the arbitrator that Ripley would not participate in an arbitration until the appeal was resolved. The arbitrator refused to continue the matter and it proceeded as a default, resulting in a large award against Ripley.

Fire then hired new counsel to associate with Wright for purposes of appealing the judgment against Ripley. Fire also hired other counsel to file a separate action alleging that Wright's and Ripley's mishandling of the litigation caused the poor result. Ripley then filed her own cross-complaint against Fire and Wright. For awhile the case looked like a growth industry.

Ripley's appeal of the personal injury judgment was unsuccessful. Fire then agreed to "loan" Ripley the funds to pay the judgment and "forgive the loan," in exchange for which Ripley would continue to pursue a malpractice claim against Wright and pay Fire from any proceeds of that suit. This arrangement was apparently intended to avoid the prohibition on subrogation claims by insurers against attorneys (see *Fireman's Fund Ins. Co.* v. *McDonald, Hecht & Solberg* (1994) 30 Cal.App.4th 1373 [36 Cal.Rptr.2d 424]), and to create the impression Ripley herself had incurred personal liability for the judgment against her and had thus been damaged by Wright's alleged malpractice.

Despite the care devoted to this arrangement, the trial court recognized its effect was to fully indemnify Ripley, and she had suffered no actual damage. On that basis, the court granted summary judgment in favor of Wright on Ripley's malpractice claim. In connection with the summary judgment, Wright also sought sanctions under Code of Civil Procedure section 128.5. While noting it was a "more difficult" issue than the summary judgment itself, the court denied the sanction request because it could not say the case "was frivolous and in bad faith." The court was clear, however, that it was making no finding the case was supported by probable cause.

The court subsequently granted summary judgment in favor of Wright on Fire's claim for breach of duties under Civil Code section 2860, subdivision

(d). The court again refused to award sanctions, but did not specify reasons for its refusal.

Wright then filed this case, alleging malicious prosecution of the prior claims against him by both Ripley and Fire.[2] Ripley and Fire moved for judgment on the pleadings, arguing the court's refusal to award sanctions in the underlying case, and specifically its conclusion that no "bad faith" had been established, collaterally estopped Wright from proving the malice element of his current claim. The trial court agreed and granted the motion.

## I

Res judicata is a doctrine which prevents parties from relitigating a cause of action previously determined between them. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439].) Collateral estoppel, or issue preclusion, is a form of res judicata. "Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. [Citations.]" (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321], fn. omitted.) However, collateral estoppel is not mechanically applied, and in each case the court must determine whether its application will advance the public policies which underlie the doctrine. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 342-343 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) Those policies are "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622].)

Moreover, in deciding whether to apply collateral estoppel, ". . . a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." (*People* v. *Taylor, supra,* 12 Cal.3d at p. 695.) Thus, collateral estoppel should not be applied if there was no opportunity for a full presentation of the issue in the first proceeding. (*Rohrbasser* v. *Lederer* (1986) 179 Cal.App.3d 290, 298 [224 Cal.Rptr. 791] [". . . the test is whether the person attacking the judgment made a detailed presentation of the issues . . . or was given a full opportunity at the time of the hearing to develop the issues by oral testimony. Otherwise, it is still the rule that denial of the motion is not res judicata of the issues and the subsequent independent equitable action can be maintained."].)

---

[2] It is possible more lawsuits could have been generated by this set of facts, but the pool of available attorneys must have been dwindling rapidly.

In *Rohrbasser* v. *Lederer, supra,* 179 Cal.App.3d 290, the court concluded that denial of a motion to vacate a judgment on the grounds of extrinsic fraud was not entitled to collateral estoppel effect in a subsequent action to set aside the judgment. The motion in that case had been based exclusively on declarations, without live testimony. Relying in part upon California Rules of Court, rule 323(a), which discourages the use of oral testimony in support of motions,[3] the court rejected the suggestion the plaintiff must have requested, and been denied, the opportunity to present live testimony before claiming the motion procedure was insufficient to support collateral estoppel.[4]

The *Rohrbasser* court reasoned that judicial economy was served by allowing a party claiming extrinsic fraud to first attempt the summary remedy of a motion to vacate in the original proceeding, and requiring them to pursue a separate action with live testimony only if the summary proceeding was ineffective. In that way, the claims for which a summary motion procedure is sufficient could be easily resolved. However, if the denial of a summary motion was given collateral estoppel effect, the aggrieved party would be less likely to attempt it, and would instead opt for the less efficient option of pursuing a full evidentiary hearing or trial in each case.

 We conclude the *Rohrbasser* judicial economy analysis is also applicable here. The majority of sanction motions can be resolved summarily, and the party seeking sanctions should be encouraged to pursue that option rather than pushed into seeking a full evidentiary hearing. Most litigants will accept the result of the sanction motion whatever it is, and for the relatively few who pursue the issue further, little time would have been

---

[3]California Rules of Court, rule 323(a) provides: "Evidence received at a law and motion hearing shall be by declaration and affidavit and by request for judicial notice without testimony or cross-examination, except as allowed in the court's discretion for good cause shown or as permitted by local rule. A party seeking permission to introduce oral evidence, except for oral evidence in rebuttal to oral evidence presented by the other party, shall file, no later than three court days before the hearing, a written statement setting forth the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing. When the statement is filed less than five court days before the hearing, the filing party shall serve a copy on the other parties in a manner to assure delivery to the other parties no later than two days before the hearing." See also Orange County Local Rules, rule 514A, which similarly discourages oral testimony in connection with motions.

[4]See also *Barker* v. *Hull* (1987) 191 Cal.App.3d 221 [236 Cal.Rptr. 285], in which the court concluded denial of a motion to vacate a judgment was entitled to res judicata effect in a separate proceeding to attack the judgment, because plaintiff had been given a full opportunity to prove his claim in connection with the original motion, including the right to take depositions on the issue. The court agreed with *Rohrbasser* that ". . . the party asserting a collateral estoppel must prove that the issue was raised, actually submitted for determination and determined. A mere showing that affidavits were submitted may not be sufficient to carry the burden of proving that the issue was actually litigated." (191 Cal.App.3d at p. 226.)

wasted on the motion. Moreover, if collateral estoppel effect were given to the denial of such motions, it would also have to be given when they are granted. It is difficult to imagine the extent to which judicial economy would be compromised if every lawyer against whom sanctions were sought understood that such an award would constitute a binding adjudication on issues of his or her unprofessional conduct. Regular court business would grind to a halt while lawyers exercised their full due process rights to fight the charges.

Second, allowing a person denied sanctions to pursue a malicious prosecution case would not undermine the integrity of the judicial system by creating the possibility of inconsistent results. ▮ Code of Civil Procedure section 128.5 was not intended to replace suits for malicious prosecution. (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) It serves a different purpose. Whereas a malicious prosecution action is intended to compensate the wronged litigant, section 128.5 was enacted to broaden the courts' power to manage their calendars and expedite litigation. (Stats. 1985, ch. 296, § 1, p. 1335.) Thus, a court's decision whether to award sanctions may be influenced by factors extrinsic to a malicious prosecution case. The statute itself provides the liability it imposes is "in addition to any other liability imposed by law for acts and omissions within the purview of this section" (Code Civ. Proc., § 128.5, subd. (e)) and limits recovery to "reasonable" out-of-pocket litigation expenses, rather than actual damages.

In *Crowley* v. *Katleman, supra,* 8 Cal.4th 666, the Supreme Court analyzed the merits of a malicious prosecution case in a situation where the trial court had denied sanctions in the underlying case. Although the Supreme Court did not directly consider the issue of res judicata or collateral estoppel, it did note that the denial of a sanction request will not always reflect the merits of a malicious prosecution claim, for the simple reason that "trial courts may be more reluctant to charge litigants or attorneys appearing before them with bad faith than juries to whom such persons are total strangers." (*Crowley, supra,* 8 Cal.4th at p. 689, fn. 12.)

Indeed, the Supreme Court described the denial of sanctions in the case underlying *Crowley* as a "striking example of this phenomenon" (8 Cal.4th at p. 689, fn. 12): The trial court in that case, after issuing its statement of decision describing the plaintiff's story as a "manufactured script" and noting the "overwhelming" evidence of perjury, nonetheless concluded " 'the Court cannot say the case was one *totally* devoid of merit or *solely* intended to harass . . . or cause unnecessary delay.' " (*Ibid.*) In refusing to sanction the attorneys who presented the case, the court "extoll[ed] them as persons

'well known to this Court to be attorneys of great excellence and integrity.' " (*Ibid.*) Such considerations aptly illustrate the morass into which we would be led if sanction motions were determinative of substantive issues, a morass which appellant unfortunately did not adequately describe to the court below.

 Nor do we believe allowing a party to pursue a malicious prosecution action after being summarily denied sanctions in the underlying proceeding will substantially increase the opportunity for vexatious litigation. Because the sanction proceeding is of a summary nature, it is not particularly burdensome, and the complaining party will still be entitled to only one opportunity to fully litigate the claim.

The judgment is reversed, and the case remanded to the trial court for further proceedings. Appellant is to recover his costs.

Sills, P. J., and Crosby, J., concurred.