[No. D044616. Fourth Dist., Div. One. Nov. 4, 2005.]

ALPHA MECHANICAL, HEATING & AIR CONDITIONING, INC.,
Plaintiff and Respondent, v.
TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,
Defendant and Appellant.

1320

1322

COUNSEL

Watt, Tieder, Hoffar & Fitzgerald, Ali Salamirad, Robert C. Niesley and John A. Elworth for Defendant and Appellant.

McAteer & McAteer, Theresa C. McAteer and Christopher E. McAteer for Plaintiff and Respondent.

## OPINION

**O'ROURKE, J.**—Travelers Casualty and Surety Company of America (Travelers) appeals from a judgment in favor of respondent Alpha Mechanical, Heating and Air Conditioning, Inc. (Alpha), following a bench trial on Alpha's complaint seeking payment from Travelers as surety on a payment bond for R.A.S. Builders, Inc. (RAS). The parties had earlier settled a cross-complaint filed by RAS against Alpha, which RAS had dismissed with prejudice before trial. At trial on Alpha's complaint, the trial court granted Alpha's motion in limine to preclude RAS, on res judicata grounds, from introducing any of the facts related to RAS's dismissed cross-complaint. Travelers contends the court's in limine ruling deprived RAS of its right to defend itself and was error because (1) principles of res judicata and collateral estoppel are inapplicable in that for purposes of res judicata or claim preclusion, the primary rights involved in Alpha's complaint and RAS's cross-complaint are separate and distinct, and for purposes of collateral estoppel or issue preclusion, none of the issues in RAS's cross-complaint were actually litigated; (2) the authority relied upon by the trial judge, *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813 [265 Cal.Rptr. 217] (*Torrey Pines Bank*), was wrongly decided and provides no basis for the trial court's in limine order; (3) Alpha agreed in the settlement agreement that RAS's dismissal would not affect its rights in presenting its case at trial and thereby waived its right to challenge RAS's evidence before trial by way of its motion; and (4) policy considerations in furtherance of judicial efficiency militate against applying the holding of *Torrey Pines Bank* to this case. Travelers further contends the trial court erred as a matter of law by awarding Alpha prompt payment penalties, which also requires that we reverse the attorney fee award in Alpha's favor.

As to Travelers' latter claim, we agree the evidence does not support imposition of penalty interest, and modify the judgment to strike that portion of the award. We affirm the judgment as so modified.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are not in dispute. Alpha entered into a subcontract with RAS to install plumbing and perform other mechanical work for construction of a new hotel. Travelers issued a payment bond on RAS's behalf. RAS did not pay Alpha a final installment of approximately $199,000, telling Alpha it was withholding payment because Alpha had caused damage to other trades' work on the project.

Alpha sued RAS and Travelers (as well as other entities not involved in this appeal) demanding payment of the balance of the subcontract. Its

complaint included causes of action for breach of contract, open book account, account stated, quantum meruit, foreclosure of a mechanic's lien and enforcement of mechanic's lien release and payment bonds against RAS, and enforcement of a contractor's license bond against Travelers. In part, Alpha alleged it had performed all covenants and conditions of its subcontract and various modifications (change orders) to the subcontract excluding obligations it was prevented or excused from performing, that RAS breached the subcontract and change orders by refusing to pay for labor and materials furnished by Alpha and also by causing Alpha delay and disruption in its work, and that Alpha had suffered damages of not less than approximately $199,000 as a result of RAS's breach.

RAS and Travelers answered, generally denying the allegations in Alpha's complaint and asserting 23 affirmative defenses. In the sixth and eighth affirmative defenses, RAS and Travelers alleged that Alpha's own negligence or unlawful conduct proximately caused in whole or in part the damages alleged in its complaint. In the 11th affirmative defense, RAS and Travelers alleged Alpha "materially breached its agreement and further failed and refused to comply with the contractual conditions precedent to this action, thereby extinguishing its right to maintain this action . . . ." In the 12th affirmative defense, RAS and Travelers alleged Alpha was "indebted to them in a sum not yet ascertained and that said sums are an offset against" any of Alpha's claims. RAS concurrently filed a cross-complaint against Alpha and other entities, in part alleging that Alpha breached the subcontract by refusing to correct work that had been deemed defective by the hotel's owner, and breached its duty to use reasonable care in performing the subcontract by negligently installing materials and failing to perform as required under the subcontract. RAS sought over $800,000 in damages consisting of over $300,000 in costs to correct Alpha's assertedly defective work and over $500,000 in "delay damages."

Alpha, RAS and Alpha's indemnitors eventually entered into a settlement agreement and mutual release (the settlement agreement) in which RAS agreed to dismiss its cross-complaint with prejudice in exchange for payment of $162,500. The settlement agreement contained terms preserving Alpha's right to prosecute, and RAS's ability to defend against Alpha's complaint: "The payment of $162,500 to RAS from Alpha [and its indemnitors], and RAS' [sic] acceptance of said money, in no way affects Alpha's ability to prosecute its lawsuit against RAS or RAS' [sic] ability to defend against the lawsuit pursuant to its general denial filed on or about October 21, 2001, by refuting elements of Alpha's causes of action." This term was included at

several points in the settlement agreement as an exclusion to the various waivers under Civil Code section 1542.[1]

Before trial, Alpha moved in limine to exclude "all evidence, allegations and claims" related to RAS's affirmative defenses and cross-complaint. Relying on *Torrey Pines Bank, supra,* 216 Cal.App.3d 813, Alpha argued that the settlement and RAS's receipt of consideration in exchange for the dismissal with prejudice of its cross-complaint as a matter of law prevented RAS from introducing evidence regarding the subject matter of the cross-complaint or its sixth, eighth and 11th, affirmative defenses because those affirmative defenses involved the same nucleus of operative facts and raised the same legal issues (Alpha's breach of contract and asserted negligence) as those presented in RAS's cross-complaint. RAS opposed the motion, arguing evidence of Alpha's defective or negligent performance was an issue raised by the filing of Alpha's complaint and put into controversy by RAS's general denial, and thus evidence of such matters was admissible under *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532 [78 Cal.Rptr.2d 725] (*Walsh*). RAS further argued the settlement agreement expressly reserved RAS's right to defend against Alpha's complaint.

The trial court "reluctantly" granted Alpha's motion under the authority of *Torrey Pines Bank.* It ruled RAS's evidence of Alpha's assertedly defective performance was inadmissible under principles of res judicata and common law retraxit because it was new matter based on the same facts put in issue by RAS's cross-complaint.

The trial court's evidentiary ruling resulted in an abbreviated trial on the matter.[2] Alpha presented the testimony of its president, chief executive officer and chief financial officer, Borris Barshak, and RAS presented that of its Southern California regional vice president, Walter Clark. Barshak testified that Alpha performed all of its obligations, but still had a balance due of $199,164.77 under the subcontract with RAS. Barshak admitted that at some point, RAS notified Alpha that it had decided to withhold the subcontract balance based on the fact Alpha had caused damage to other trades' work on the project. Clark testified that RAS had spent $280,000 to pay other subcontractors to repair work that was damaged by Alpha's own work, and

---

[1] "Notwithstanding this provision [the Civil Code section 1542 waiver], or any of the provisions in this [settlement agreement], the releases . . . shall not pertain to or impact Alpha's ability to proceed with the prosecution of the lawsuit or RAS's ability to defend against the lawsuit pursuant to its general denial filed on or about October 21, 2002."

[2] RAS's counsel pointed out for the record that absent the court's in limine ruling, he was prepared to present two experts and six percipient witnesses to defend the matter. He argued the court's evidentiary ruling essentially transformed the matter into a default prove-up, causing substantial prejudice to RAS.

for that reason withheld payment to Alpha under a provision in the subcontract that allowed RAS to correct defaults of a subcontractor and deduct the cost of such correction from the subcontract sum.

The court entered a joint and several judgment in Alpha's favor, awarding it the principle sum in the amount of $199,164.44, as well as statutory prompt payment penalties of $70,268.04, prejudgment interest, attorney fees and costs. Travelers appeals.

## DISCUSSION

### I. *Effect of RAS's Dismissal of Its Cross-complaint with Prejudice*

Travelers contends res judicata was not a bar to RAS's ability to present evidence relating to damages and delay caused by Alpha's negligence on the project, even despite RAS's dismissal of its cross-complaint with prejudice. It urges us to reject *Torrey Pines Bank* as wrongly decided; in part Travelers maintains the majority's reasoning is flawed because it omits the critical elements of collateral estoppel analysis that an issue be actually litigated or necessarily decided in a later proceeding. To address these contentions, we first set out the relevant legal principles and discuss the holding of *Torrey Pines Bank*. We review the questions presented in this matter de novo, as the decisive facts are undisputed. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

### A. *Principles of Res Judicata*

■ The doctrine of res judicata "describes the preclusive effect of a final judgment on the merits." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*).) It promotes judicial economy as it " ' "precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' " (*Id.* at p. 897.) The doctrine has two aspects: the first is claim preclusion, otherwise known as res judicata, which "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Id.* at pp. 896–897 & fn. 7; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) The second is issue preclusion, or collateral estoppel, which " 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen*, at p. 896, quoting *Lucido*, at p. 341.)

■ To determine whether claim preclusion bars another action or proceeding, courts look to whether the two proceedings involve the same cause

of action. In California, the primary right theory determines whether two separate actions concern a single cause of action. (*Mycogen, supra,* 28 Cal.4th at p. 904.) Under this theory, " 'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] . . . [¶] [T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised: . . . The primary right must also be distinguished from the remedy sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' " (*Ibid.,* italics omitted.) " ' "[T]he harm suffered" ' " is " ' "the significant factor" ' " in defining a primary right. (*Craig v. County of Los Angeles* (1990) 221 Cal.App.3d 1294, 1301 [271 Cal.Rptr. 82]; accord, *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 992 [95 Cal.Rptr.2d 837]; *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 340 [29 Cal.Rptr.2d 314].)

In analyzing whether a second action or proceeding is barred by issue preclusion or collateral estoppel, we look to whether "the decision in the initial proceeding was final and on the merits and the issue sought to be precluded from relitigation is identical to that decided in the first action and was actually and necessarily litigated in that action." (*Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1171 [2 Cal.Rptr.3d 408] (*Le Parc*), citing *Lucido v. Superior Court, supra,* 51 Cal.3d at p. 341.)

"The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28], italics omitted; see *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].)

B. *Application of Res Judicata to Affirmative Defenses*

In *Torrey Pines Bank*, a majority of this court held that a party's voluntary dismissal of an action with prejudice constituted a judgment on the merits with res judicata effect, serving to bar that party from asserting affirmative defenses in a different action based on the "same nucleus of operative facts" as those alleged in the party's dismissed complaint. There, a

bank sued White, who had guaranteed a bank loan and a Small Business Administration (SBA) loan, to enforce the guaranties favoring the bank. (*Torrey Pines Bank, supra*, 216 Cal.App.3d at p. 817.) White's answer included numerous affirmative defenses, including breach of fiduciary duty, fraud and misrepresentation; in particular, White alleged the bank had " 'prevented performance under the guarantee by misrepresentation of the offer of plaintiff's sureties to retire one of the other respective loans.' " (*Torrey Pines Bank*, at p. 817, fn. 1.) White also sued the bank in a separate lawsuit for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and negligence. (*Torrey Pines Bank*, at p. 817.) In that action, White alleged the bank had misrepresented the terms of an offer by the debtor to the SBA to restructure the loans. (*Ibid.*) White later dismissed his lawsuit against the bank with prejudice. (*Ibid.*)

■ The bank moved for summary judgment in its lawsuit on the ground White's voluntary dismissal with prejudice of his own lawsuit constituted a judgment on the merits and thus collaterally estopped him from raising the same issues and claims as affirmative defenses in the bank's lawsuit. (*Torrey Pines Bank, supra*, 216 Cal.App.3d at p. 818.) The trial court denied summary judgment and a majority panel of this court reversed, holding White's affirmative defenses were barred under principles of res judicata. Specifically, the majority reasoned White's voluntary dismissal of his complaint with prejudice operated as a common law retraxit—equivalent to a judgment on the merits—barring relitigation of issues based on the "same factual grounds" as alleged in his complaint. (*Id.* at pp. 820–821.) It explained: " ' "[A] final judgment on the merits in a prior action is conclusive between the same parties in a subsequent action involving the same subject matter." [Citation.]' [Citation.] Res judicata bars 'not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit.' " (*Torrey Pines Bank, supra*, 216 Cal.App.3d at p. 821; see also *id.* at p. 824.) The majority specifically rejected the notion that a voluntary dismissal with prejudice could not have the same effect as a full trial, reasoning that "[t]he dismissal with prejudice was a retraxit constituting a decision on the merits invoking the principles of res judicata." (*Id.* at p. 822, citing *Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 455; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1085 [255 Cal.Rptr. 469] (*Roybal*); *Gates v. Superior Court* (1986) 178 Cal.App.3d 301, 311 [223 Cal.Rptr. 678]; *Rodriguez v. Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46, 54 [190 Cal.Rptr. 705]; *Wouldridge v. Burns* (1968) 265 Cal.App.2d 82, 85 [71 Cal.Rptr. 394]; *Sylvester v. Soulsburg* (1967) 252 Cal.App.2d 185, 189 [60 Cal.Rptr. 218]; *Palmquist v. Palmquist* (1963) 212 Cal.App.2d 340, 343 [27 Cal.Rptr. 756]; *Datta v. Staab* (1959) 173 Cal.App.2d 613, 621 [343 P.2d 977]; *Sears v. DeMota* (1958) 157 Cal.App.2d 216, 220 [320 P.2d 579];

*Ghiringhelli v. Riboni* (1950) 95 Cal.App.2d 503, 506 [213 P.2d 17].) Further, the majority emphasized that " ' " '[i]t is the title, right or obligation sought to be established or enforced, not the remedy or the relief sought, which determines the nature and substance of the cause of action. When this has once been adjudicated it cannot be relitigated upon any grounds that were or that could have been determined in the former action.' " ' " (*Torrey Pines Bank*, at p. 824.)

Because the bank had established the material elements of its causes of action—that White had guaranteed payment, the debtor defaulted on its loans, the bank notified White of the defaults, and White did not remit any funds under the agreements—and White's affirmative defenses were barred by res judicata, this court concluded the bank was entitled to summary judgment on its complaint. (*Torrey Pines Bank, supra*, 216 Cal.App.3d at pp. 819, 824.)

*Torrey Pines Bank* was analyzed by the Sixth District Court of Appeal in *Walsh, supra*, 66 Cal.App.4th 1532. In *Walsh*, a construction company (SCI) sued a college district (District) for breach of contract, among other causes of action, after District terminated their contract for construction of a gymnasium. (*Id.* at pp. 1534, 1536.) District had filed a cross-complaint against SCI and others, alleging SCI "failed to construct the gymnasium on time or in a good and workmanlike manner, that the District performed its obligations under the contract, and that it suffered damages and extra costs, including property damage, as a result of SCI's actions." (*Id.* at p. 1536.) District's cross-complaint was eventually settled for, among other things, SCI's insurer's payment to District of $360,000 for its property damage and bad faith insurance claims. (*Ibid.*) District then dismissed its cross-complaint with prejudice. (*Id.* at p. 1537.)

On the second day of trial, SCI filed a motion for summary judgment/judgment on the pleadings under the authority of *Torrey Pines Bank*, arguing the dismissal with prejudice of District's cross-complaint barred District from asserting any affirmative defenses in SCI's action. (*Walsh, supra*, 66 Cal.App.4th at pp. 1541–1542.) District responded with its own motion to set aside the dismissal under Code of Civil Procedure section 473. (*Id.* at p. 1543.) Over a week into the trial, the trial court granted the District's motion, and denied SCI's request for judgment on the pleadings. (*Id.* at p. 1544.) It found District was not actually asserting affirmative defenses; that the trial evidence was exclusively concerned with SCI's contract performance and SCI's claim that District itself breached the contract by failing to provide consistent plans and specifications, issue change orders and grant extensions of time, which cost SCI money. (*Ibid.*) Eventually, District obtained a jury verdict in its favor, and the trial court entered judgment accordingly. (*Id.* at p. 1535.)

■ The Court of Appeal affirmed the resulting judgment in District's favor. In doing so, it emphasized the "critical distinction" between an affirmative defense, which raises new matter, and a general denial (also known as a traverse), which simply denies the allegations of the complaint. (*Walsh, supra,* 66 Cal.App.4th at pp. 1545–1546.) It said: " 'Under Code of Civil Procedure section 431.30, subdivision (b)(2), the answer to a complaint must include "[a] statement of any new matter constituting a defense." The phrase "new matter" refers to something relied on by a defendant *which is not put in issue by the plaintiff.* [Citation.] Thus, where matters are not responsive to essential allegations of the complaint, they must be raised in the answer as "new matter." [Citation.] Where, however, *the answer sets forth facts showing some essential allegation of the complaint is not true, such facts are not "new matter," but only a traverse.'* " (*Id.* at p. 1546, quoting *State Farm Mut. Auto Ins. Co. v. Superior Court* (1991) 228 Cal.App.3d 721, 725 [279 Cal.Rptr. 116].)

With this distinction in mind, the court of appeal distinguished *Torrey Pines Bank,* observing it involved a situation where the guarantor, White, did not simply contest the allegations of the bank's complaint by a traverse, but rather sought to establish defenses constituting new matter, namely, that his guaranty was procured by the bank via negligent and intentional misrepresentations. (*Walsh, supra,* 66 Cal.App.4th at p. 1547, citing *Torrey Pines Bank, supra,* 216 Cal.App.3d at p. 816.) Those matters were not brought into controversy by the bank's complaint in that case. (*Walsh,* at p. 1547.) In contrast, the *Walsh* court explained, District did not raise new matter, but merely presented evidence to refute SCI's allegations that had been put into controversy by the District's general denial. (*Id.* at pp. 1547–1548.) Under those circumstances, District was properly permitted to defend itself against the allegations of SCI's complaint, and the trial court's order granting District's Code of Civil Procedure section 473 motion, even if error, did not prejudice SCI. (*Walsh,* at pp. 1547–1548.)

C. *RAS's Dismissal with Prejudice of Its Cross-complaint Is a Retraxit—A Final Judgment on the Merits—Barring Further Litigation of Claims Therein Under Principles of Res Judicata*

We decline Travelers' invitation to reconsider *Torrey Pines Bank,* since we do not find its analysis flawed. As *Torrey Pines Bank* and a host of other authorities explain, a retraxit—modernly effected by a plaintiff's filing of a dismissal of his or her action with prejudice—is *deemed to be a judgment on the merits* against that plaintiff. (*Torrey Pines Bank, supra,* 216 Cal.App.3d at p. 820; see *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733–734 [97 Cal.Rptr.2d 110] ["A retraxit is a judgment on the merits preventing a subsequent action on the dismissed claim"]; *Long Beach Grand Prix Assn. v. Hunt* (1994) 25

Cal.App.4th 1195, 1198 [31 Cal.Rptr.2d 70] ["A dismissal with prejudice 'is equivalent to a judgment on the merits . . . .' "]; *Roybal, supra,* 207 Cal.App.3d at pp. 1085–1086; *Datta v. Staab, supra,* 173 Cal.App.2d 613, 621 [" 'A retraxit is equivalent to a verdict and judgment on the merits of the case . . .' "].) In its common law form, a retraxit resulted from a plaintiff's "open and voluntary renunciation of his suit, in court," resulting in the loss of his or her action forever. (*Roybal,* at p. 1086, citing 3 Blackstone, Commentaries 296.) A retraxit arising from a dismissal with prejudice thus operates as a legal fiction, and it is given the same finality as if the matter were adjudicated and proceeded to a final judgment on the merits.

In further proceedings occurring between the same parties following a retraxit (as here), the dual principles of res judicata arise because it is necessary to determine the preclusive effect of the retraxit/final judgment in the defendant's favor. In other words, a court will apply principles of res judicata to resolve precisely what causes of action or issues are barred as a result of the retraxit. Hence, in *Torrey Pines Bank,* we described retraxit as *invoking* principles of res judicata. (*Torrey Pines Bank, supra,* 216 Cal.App.3d at pp. 819–820.) It is therefore incorrect to suggest, as some courts have (*Morris v. Blank* (2001) 94 Cal.App.4th 823, 830 [114 Cal.Rptr.2d 672]), that res judicata principles somehow supplant the retraxit doctrine; to the contrary, as stated, res judicata principles are applied to ascertain the scope and effect of the retraxit and thus the principles operate together.[3]

With this understanding and applying *Torrey Pines Bank,* we consider and reject Travelers' arguments that res judicata does not serve to bar the claims asserted in RAS's cross-complaint. As to the claim preclusion aspect of res judicata, Travelers maintains the primary rights RAS sought to enforce in its cross-complaint—the right to be free from Alpha's defective and negligent work—sounded in tort, and were different from the primary right at issue in Alpha's complaint, namely, Alpha's right to payment under its contract. As Alpha points out, this analysis is misplaced. RAS would have us strictly compare only "causes of action" in our primary rights analysis, and thus compare RAS's causes of action with Alpha's causes of action, RAS's primary rights with Alpha's primary rights. *Torrey Pines Bank* instructs otherwise. The question under *Torrey Pines Bank* is whether in the present proceeding RAS seeks to relitigate the same subject matter in its affirmative

---

[3] The court of appeal in *Morris v. Blank, supra,* 94 Cal.App.4th 823, stated, "[W]hen there is a voluntary dismissal with prejudice under Code of Civil Procedure section 581, the relevant question to be asked when one of the parties to the dismissed litigation seeks to litigate issues arising out of the same transaction is whether the litigation is barred by res judicata or collateral estoppel, *not retraxit. We hold that retraxit is no longer applicable in this situation.*" (*Id.* at pp. 829–830, italics added, relying on *Datta v. Staab, supra,* 173 Cal.App.2d 613.) We disagree with the court's latter statement for the reasons stated *ante.*

defenses as it finally resolved in its cross-complaint via retraxit. (See *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 312 [250 Cal.Rptr. 116, 758 P.2d 58] [retraxit amounts to a decision on the merits and as such is a bar to further litigation on the same subject matter between the parties]; *Torrey Pines Bank, supra,* 216 Cal.App.3d at p. 821.) Thus, we compare the rights RAS asserted in its cross-complaint with the rights it asserts in its affirmative defenses.

Undertaking this analysis, we conclude RAS sought to relitigate the same claims. In its cross-complaint, RAS sought relief under theories of breach of contract and negligence for Alpha's defective or wrongful performance, which it alleged to have caused property damage and damage to the work of other trades. RAS's sixth, eighth, 11th, and 12th affirmative defenses likewise sought to hold Alpha responsible for its wrongful and negligent contract performance resulting in those damages. In both proceedings, RAS's primary right was its right to competent performance by Alpha, Alpha's primary duty was to competently perform under the contract, and Alpha's wrong was its negligent or wrongful performance, assertedly resulting in property damage. Travelers' attempt to distinguish the primary rights as sounding in tort or contract is irrelevant; " 'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 [17 Cal.Rptr.2d 639].)

Travelers further argues claim preclusion cannot be applied under these circumstances because it may be used only defensively and not offensively; and that Alpha's assertion of res judicata under these circumstances "find[s] no support in the law." The argument ignores *Torrey Pines Bank.* In any event, because this point was made for the first time in Travelers' reply brief, we decline to consider it further. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [142 Cal.Rptr. 429, 572 P.2d 43]; *Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3 [105 Cal.Rptr.2d 172] [citing cases].)

Although we need not reach the issue preclusion/collateral estoppel component of res judicata,[4] the same result follows if we were to analyze it under

---

[4] Our state's high court has made it clear that collateral estoppel is simply a broader aspect of res judicata: "[R]es judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Thus, we have already resolved the issue presented

those principles. In challenging application of collateral estoppel, Travelers argues none of the issues presented in RAS's cross-complaint were actually litigated or necessarily decided in view of RAS's voluntary dismissal with prejudice. It cites *Le Parc, supra,* 110 Cal.App.4th 1161, and *Rice v. Crow, supra,* 81 Cal.App.4th 725, both of which declined to apply collateral estoppel to bar relitigation of issues following a dismissal with prejudice. Citing the Restatement Second of Judgments, the court in *Rice v. Crow* reasoned that "[a] settlement which avoids trial generally does not constitute actually litigating any issues and thus prevents application of collateral estoppel." (*Rice v. Crow,* at p. 736, citing Rest.2d Judgments, § 27, com. e, p. 257 ["In the case of a judgment entered by confession, consent or default, none of the issues is actually litigated"].) However, in a footnote, the *Rice* court recognized contrary authority, including from the California Supreme Court (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156]), holding that a consent or stipulated judgment may properly be given collateral estoppel effect. (*Rice v. Crow,* at p. 737, fn. 1.) But the *Rice* court rejected the principle, stating it had "no application here because there is no judgment, stipulated or otherwise." (*Ibid.*)

■ In the context of a dismissal with prejudice, we respectfully disagree with this reasoning. In fact, in this case there *is* a final judgment on the merits via retraxit, which is deemed by law to have resulted from the filing of the dismissal. Thus, if we were to characterize RAS's affirmative defenses not as claims but as "issues" for purposes of applying collateral estoppel, we would hold those issues were deemed to have been actually litigated and determined when the identical issues presented by RAS's cross-complaint were reduced to a final judgment on the merits. Importantly, "collateral estoppel is not mechanically applied, and in each case the court must determine whether its application will advance the public policies which underlie the doctrine. [Citation.] Those policies are '(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation.' " (*Wright v. Ripley* (1998) 65 Cal.App.4th 1189, 1193 [77 Cal.Rptr.2d 334]; see also *Vandenberg v. Superior Court, supra,* 21 Cal.4th at p. 829.)

These policies are advanced by applying collateral estoppel here. RAS had a full and fair opportunity to litigate its cross-complaint, but instead elected to enter into the settlement agreement and receive $162,500 in exchange for dismissing its cross-complaint with prejudice. If RAS were permitted to

---

by our holding that RAS is barred from relitigating claims in its affirmative defenses that are identical to the causes of action in its cross-complaint.

renew those claims, there would be no meaning to the phrase "with prejudice" (*Gagnon Co., Inc. v. Nevada Desert Inn, supra,* 45 Cal.2d 448, 455 [289 P.2d 466]; *Roybal, supra,* 207 Cal.App.3d at pp. 1085–1086) and Alpha would suffer prejudice from being forced to defend against successive suits involving matters already finally determined. (*Roybal, supra,* at p. 1087.) Under these circumstances, RAS should be required to put an end to the disputes in that proceeding forever; the parties must " ' "rest upon one decision in their controversy." ' " (*Torrey Pines Bank, supra,* 216 Cal.App.3d at p. 821.) Res judicata (in its collateral estoppel aspect) thus operates to prevent " 'subsequent litigation of all issues which were or could have been raised in the original suit.' " (*Ibid.,* quoting *Gates v. Superior Court, supra,* 178 Cal.App.3d at p. 311.)[5]

## D. *Acceptance and Waiver*

Travelers contends that even assuming RAS's dismissal with prejudice triggers res judicata, RAS and Alpha expressly agreed in their settlement agreement that the dismissal would not have that effect, and they would each have the right to "present their case at trial." Under the same rationale, Travelers argues Alpha waived its right to bring its in limine motion. We reject both contentions.

We have no quarrel with Travelers' proposition that parties may by agreement limit the legal effect of a dismissal with prejudice so that it would not constitute a retraxit and affect their rights in a later pending action. (*American Bankers Ins. Co. v. Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 737 [159 Cal.Rptr. 70]; *Manning v. Wymer* (1969) 273 Cal.App.2d 519, 526 [78 Cal.Rptr. 600].) But the settlement agreement between RAS and Alpha here was not so broadly worded as to permit RAS to "present [its] case" including its defenses. To the contrary it was very specifically worded to exclude affirmative defenses: it provided RAS would retain the "ability to defend against [Alpha's] lawsuit *pursuant to its general denial . . . by refuting elements of Alpha's causes of action.*" Exercising our ability to interpret this language de novo (see *Morgan v. City of Los Angeles Bd. of*

---

[5] We observe the *Torrey Pines Bank* dissent placed great emphasis on the fact that the dismissal with prejudice in that case was not negotiated for consideration, and there were no reasons apparent in the record for dismissing the case in that manner. (*Torrey Pines Bank, supra,* 216 Cal.App.3d at pp. 825–826 (dis. opn. of Huffman, J.).) The dissent expressly distinguished the *Torrey Pines Bank* facts from other cases in which the dismissal with prejudice "was based on a stipulated judgment following a settlement agreement reached upon some sort of consideration." (*Id.* at p. 828.) The latter is the procedural context presented here, where the parties settled RAS's cross-complaint for consideration, permitting a reasonable inference they intended to establish a conclusive judgment of that cross-complaint on the merits. Even if we were to consider the dissenting rationale of *Torrey Pines Bank,* it is plainly inapposite and does not compel a different result here.

*Pension Comrs.* (2000) 85 Cal.App.4th 836, 843 [102 Cal.Rptr.2d 468]), we easily conclude the parties' agreement operated to permit RAS to defend against Alpha's complaint by asserting matters brought into issue by its general denial, that is, by denying the allegations of Alpha's complaint. (See *Walsh, supra,* 66 Cal.App.4th at pp. 1545–1546.) RAS was thus entitled to refute Alpha's claim that it performed the contract by presenting evidence that Alpha did not perform, but it was not entitled to raise new matter by asserting Alpha's performance was defective or substandard. "A defense in the nature of 'yes, the allegations are true, but . . .' is not put in issue by the denial." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 383–384 [282 Cal.Rptr. 508].)

### E. *Policy*

Finally, Travelers argues that even if we conclude the threshold requirements of res judicata have been met and we reject its arguments as to Alpha's acceptance and waiver, we should reverse the judgment purely based on the public policies underlying the res judicata doctrine. Specifically, Travelers maintains our adoption of *Torrey Pines Bank* would deter litigants from dismissing their cross-complaints with prejudice even if they are convinced a trial on that proceeding is unnecessary, resulting in increased litigation of claims that would otherwise have been settled.

Travelers does not articulate or discuss any of the important policy reasons underlying the doctrine of res judicata that would be defeated by its application in Alpha's litigation. Nevertheless, we have already concluded (pt. I.C., *ante*) that the policies underlying the doctrine (collateral estoppel)— "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation"—are served by applying it in the present case.

Moreover, we reject the notion that our holding will have the asserted effect of increasing unnecessary litigation. Parties in RAS's position desiring to preserve their right to litigate issues raised in a cross-complaint may carve out those claims by separate agreement or, failing that, dismiss the cross-complaint without prejudice. As this case and *Torrey Pines Bank* demonstrate, parties in these circumstances should be extremely cautious about settling a part or piece of their litigation; they must take great care to preserve key claims or defenses, or risk losing them.

## II. *Statutory Penalty Interest*

### A. *Background*

In Alpha's trial brief, Alpha argued RAS did not comply with the requirements of Business and Professions Code section 7108.5,[6] which, Alpha asserted, was a claim alleged in its eighth cause of action. According to Alpha, the statute required RAS to pay Alpha within 10 days after receiving a progress payment from the owner. Alpha argued the statute was "in pari materia" with and mirrored the requirements of Civil Code section 3260,[7] and that both statutes therefore (1) required the contractor to give timely notice of any bona fide dispute to the subcontractor; (2) limited the amount the contractor could withhold to 150 percent of the amount in dispute; and (3) awarded attorney fees and 2 percent penalty interest for a contractor's withholding of funds in violation of the statute. Alpha suggested the court

---

[6] All statutory references are to the Business and Professions Code unless otherwise indicated. Section 7108.5 provides in part: "A prime contractor or subcontractor shall pay to any subcontractor, not later than 10 days of receipt of each progress payment, unless otherwise agreed to in writing, the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein. In the event that there is a good faith dispute over all or any portion of the amount due on a progress payment from the prime contractor or subcontractor to a subcontractor, then the prime contractor or subcontractor may withhold no more than 150 percent of the disputed amount. [¶] Any violation of this section shall constitute a cause for disciplinary action and shall subject the licensee to a penalty, payable to the subcontractor, of 2 percent of the amount due per month for every month that payment is not made. In any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs. [¶] The sanctions authorized under this section shall be separate from, and in addition to, all other remedies either civil, administrative, or criminal. [¶] This section applies to all private works of improvement and to all public works of improvement, except where Section 10262 of the Public Contract Code applies."

[7] Civil Code section 3260 provides in part: "(b) The retention proceeds withheld from any payment . . . by the original contractor from any subcontractor . . . shall be subject to this section.

"(c) Within 45 days after the date of completion, the retention withheld by the owner shall be released. . . . [¶] . . . [¶]

"(d) Subject to subdivision (e), within 10 days from the time that all or any portion of the retention proceeds are received by the original contractor, the original contractor shall pay each of its subcontractors from whom retention has been withheld, each subcontractor's share of the retention received. . . .

"(e) If a bona fide dispute exists between a subcontractor and the original contractor, the original contractor may withhold from that subcontractor with whom the dispute exists its portion of the retention proceeds. The amount withheld from the retention payment shall not exceed 150 percent of the estimated value of the disputed amount. [¶] . . . [¶]

"(g) In the event that retention payments are not made within the time periods required by this section, the owner or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs."

might entertain an amendment adding a cause of action under Civil Code section 3260 to conform to proof. Travelers did not respond to these arguments in its trial brief filed approximately two weeks later.

Following trial and the court's recitation of its oral statement of decision, the parties addressed the issue of Alpha's entitlement to these penalties. The discussion commenced as follows:

"[The Court]: I have not reviewed the trial brief in some time and I don't recall there being an issue regarding the additional interest. But it would appear that the parties did have a dispute as to the import of the retraxit issue. I don't know what that does to the additional penalty interest.

"[Alpha's counsel]: Your [H]onor, [i]n the briefs, I can summarize it here for you, but without the case with me, but there is case law that specifically discusses what constitutes a bona fide dispute and how the contractor must proceed to notify the contractor within ten days of discovery of that bona fide dispute of the amounts. And we don't have that here. We do not have notice in any sort of timely fashion under the statutes. [¶] So that's the basis for the penalty interest claim both with respect to the final payment and the retention, Alpha was not timely notified of any dispute and what notice it finally got was widely out of proportion, it got the cross-complaint which said they were due a million dollars.

"[Travelers' counsel]: There's no evidence of this. This is conjecture. We've obviously prevented [sic] from putting on evidence of notice to them pursuant to your motion in limine. Again the statutes talk about bona fide dispute exceptions. I think that when you read those, you look at the facts of this case, you'll see there was a bona fide dispute that in my opinion has not been resolved until today when this court makes its decision and the bare minimum was resolved as of March 11 when you made your ruling on the motion in limine."

Although RAS had not responded to Alpha's arguments in its trial brief on the issue, the court permitted its counsel to contest imposition of statutory penalties, including by making an offer of proof that Clark would testify RAS had notified Alpha of every single back charge it had against it. The court eventually awarded Alpha section 7108.5 penalty interest of $29,464.81 and Civil Code section 3260 penalty interest of $40,803.23, as well as attorney fees in the amount of $52,570.

B. *Analysis*

Travelers contends the court erred by awarding Alpha statutory penalty interest under section 7108.5 because (1) Alpha's complaint did not mention

such penalties and consequently RAS and Travelers did not have notice of their exposure to such a sanction; (2) the evidence is insufficient to support imposition of the penalties; (3) the court erred by imposing a notice requirement on the prompt penalty statute, section 7108.5, and Civil Code section 3260, and (4) there was a good faith dispute that excused RAS's decision to withhold payment from Alpha.

■ As for Travelers' first contention, we agree Alpha's complaint did not allege a cause of action or seek relief under either section 7108.5 or Civil Code section 3260.[8] Nevertheless, Alpha did raise its entitlement to penalty interest in its trial brief, and Travelers did not respond or object that Alpha was prevented from raising the matter for its failure to plead such relief in its complaint. Nor did Travelers make any such argument in the discussion of the issue after presentation of trial evidence. Under the circumstances, Travelers forfeited this assertion on appeal. " 'An appellate court will ordinarily not consider procedural defects . . . in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the [trial] court by some appropriate method . . . .' " (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].)

As for Travelers's remaining arguments, our review is guided by recognition that the judgment is presumed to be correct and we must indulge all presumptions in favor of its correctness. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 765–766 [110 Cal.Rptr.2d 861]; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631–632 [80 Cal.Rptr.2d 378].) In keeping with that standard, we will infer findings in support of the judgment if such findings are supported by substantial evidence. (*In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 238 [269 Cal.Rptr. 388].)

■ Here, we cannot reasonably infer the requisite findings to impose penalty interest on RAS under either section 7108.5 or Civil Code section 3260. "[S]ection 7108.5 requires a general contractor, unless otherwise agreed to by the parties in writing, to pay its subcontractors their respective shares of a progress payment within 10 days of receiving the payment from the project owner. If the general contractor fails to timely pay, the subcontractor may recover a penalty in the amount of two percent of the amount due per month for every month the payment is not made." (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 800–801 [21 Cal.Rptr.3d 751].) In the event there is a bona fide dispute over the amount owed, the statute authorizes the general contractor to withhold up to 150 percent of the

---

[8] Alpha's contention otherwise, that relief under section 7108.5 was sought by its eighth cause of action, is meritless. Alpha's eighth cause of action was for enforcement of a contractor's license bond under section 7071.6.

disputed amount. (§ 7108.5; *Tesco Controls*, *supra*, 124 Cal.App.4th at p. 801.) The same rule applies under Civil Code section 3260. (Civ. Code, § 3260, subd. (e).)

■ In assessing penalty interest under these provisions, the trial court was required to conclude that the parties did not have a "good faith dispute over all or any portion of the amount due on a progress payment." (§ 7108.5.) As stated, such a dispute would have permitted RAS to withhold sums from Alpha not in excess of 150 percent of the disputed amount.[9] (§ 7108.5; Civ. Code, § 3260, subd. (e) [using phrase "bona fide dispute"]; *Tesco Controls, Inc. v. Monterey Mechanical Co.*, *supra*, 124 Cal.App.4th at p. 801.) However, in discussing the issue, the trial court acknowledged that the parties "did have a dispute over the retraxit issue." As we interpret this comment, the court was referring to the parties' disagreement as set out in RAS's dismissed cross-complaint, namely, whether RAS was obligated to pay Alpha the remainder of the balance in view of its payment of $280,000 to remedy Alpha's defective work. At trial, Travelers' witness testified over Alpha's unsuccessful objection that RAS paid that sum to other subcontractors to repair work that was damaged by Alpha's work. It was to settle this dispute that RAS received $162,500 from Alpha.

■ We have found no authority expressly interpreting the good faith dispute standard in section 7108.5 or Civil Code section 3260. However, the phrase "good faith" does have a distinct meaning and purpose in the law. As explained in *Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203 [117 Cal.Rptr. 601], good faith "suggests a moral quality; its absence is equated with dishonesty, deceit or unfaithfulness to duty." (*Id.* at p. 211, citing *People v. Nunn* (1956) 46 Cal.2d 460, 468 [296 P.2d 813].) Another authority has stated: "Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind. [Citations]: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence." (*Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932 [6 Cal.Rptr.2d 874], italics omitted.) In *People v. Nunn*, the California Supreme Court stated that "[t]he phrase 'good faith' in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." (*People v. Nunn, supra*, 46 Cal.2d at p. 468.)

---

[9] Alpha does not assert here, and did not below, that the amount withheld by RAS/Travelers exceeded 150 percent of the amount in dispute.

 We are unable to ascertain evidence in this record showing RAS's lack of good faith in its belief that the dispute over the damage caused by Alpha justified withholding the remaining sums due it. The sole evidence on this point was RAS's witness Clark, who testified RAS believed it had overpaid Alpha and withheld payment under a specific provision of the subcontract permitting RAS to deduct its cost of correcting Alpha's defaults. There was no testimony that Clark or any other RAS representative subjectively believed its claim had no merit, but proceeded in any event. We cannot imply a finding based on this evidence that RAS and Alpha did not have a "good faith dispute" over the balance owed Alpha.

In reaching this conclusion, we necessarily reject the statutory interpretation advanced by Alpha and adopted by the trial court, inserting a requirement in both section 7108.5 and Civil Code section 3260 that the contractor must notify the subcontractor that a bona fide dispute existed within 10 days of payment by the owner. We read no such provision in either statute on their face. Nor can we imply such a requirement into the statute. In urging such an interpretation, Alpha points to the 10-day requirement in subdivision (f) of Civil Code section 3260 related to the acceptance of disputed work,[10] arguing this somehow requires there be a notice requirement since a subcontractor cannot know what work in dispute must be completed in accordance with the contract. We reject this reasoning, which is unsupported by any legislative history or other indication of legislative intent. Under the circumstances, we will not imply terms where the Legislature has excluded them in both statutes. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621–622 [59 Cal.Rptr.2d 356, 927 P.2d 713] ["When the Legislature has used a term or phrase in one part of a statute but excluded it from another, courts do not imply the missing term or phrase in the part of that statute from which the Legislature has excluded it"]; *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406]; *Citizens for Better Streets v. Board of Supervisors* (2004) 117 Cal.App.4th 1, 6 [11 Cal.Rptr.3d 349] [court will not presume intention to legislate by implication].)

### III. *Attorney Fees and Costs*

The court awarded Alpha attorney fees and costs based on the provisions of Civil Code section 1717, as a result of an attorney fee clause in the parties'

---

[10] Civil Code section 3260, subdivision (f) provides: "Within 10 days of receipt of written notice by the owner from the original contractor or by the original contractor from the subcontractor, as the case may be, that any work in dispute has been completed in accordance with the terms of the contract, the owner or original contractor shall advise the notifying party of the acceptance or rejection of the dispute work. Within 10 days of acceptance of the disputed work, the owner or original contractor, as the case may be, shall release the retained portion of the retention proceeds."

subcontract,[11] as well as section 7108.5 and Civil Code section 3260, both of which authorize an award of attorney fees and costs to the party prevailing in litigation in an action for funds wrongfully withheld. (§ 7108.5; Civ. Code, § 3260, subd. (g).) Travelers does not contend the award of attorney fees and costs was improper under Civil Code section 1717, and we conclude the court did not abuse its discretion in determining Alpha was the prevailing party on the contract for purposes of that award. (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1158 [70 Cal.Rptr.2d 769] [attorney fee award under Civ. Code, § 1717 reviewed for abuse of discretion].)

## DISPOSITION

The judgment is modified to strike the award of $70,268.04 in penalty interest under Business and Professions Code section 7108.5 and Civil Code section 3260. As modified, the judgment is affirmed. The parties shall bear their own costs on appeal.

Nares, Acting P. J., and McIntyre, J., concurred.

---

[11] The attorney fee provision of the parties' subcontract provides in part: "In the event of a breach of this Subcontract by the Subcontractor, the Subcontractor agrees to pay any damages, and indemnify and hold harmless the Contractor for any and all losses, expenses, and liabilities incurred by the Contractor, including the Contractor's reasonable attorneys' fees." Civil Code section 1717 states in relevant part: "(a) In any action on a contract, where the contract specifically provides that the attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."