Filed 5/14/15  Arkius v. Yeh CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ARKIUS, INC., | B248115 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC415114) |
| v. | |
| CHARLES YEH, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael P. Linfield, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Moon & Dorsett and Dana M. Dorsett for Plaintiff and Appellant.

David M. Browne for Defendants and Appellants Charles Yeh and Christine Yeh.

_____

Plaintiff Arkius, Inc. and defendants Charles Yeh and Christine Yeh (collectively, Yeh) both appeal from a judgment entered in favor of Arkius after a court trial on Arkius's action to recover on multiple construction contracts for repairs to a commercial building owned by Yeh. The trial court awarded Arkius $7,329.50 out of the approximately $280,000 it sought in damages for alleged unpaid work. Arkius contends the court erred in declining to award more, and the judgment must be reversed. Yeh contends the court erred in awarding Arkius anything at all, and this court must reverse the damages award as well as the award of attorney fees and costs to Arkius as the prevailing party. As explained below, we affirm in part, reverse in part, and remand the matter with directions.

## BACKGROUND

At all relevant times, Yeh owned Ardmore Plaza, a commercial building located on Sixth Street in Los Angeles. In addition to two floors of office/commercial space, the building had a small equipment room on the third floor. On the first floor, Yeh operated Hyundae Health Center, a Korean men's spa, and related businesses. Yeh rented out the offices on the second floor to multiple tenants.

In March 2006, a fire, which began on the second floor, caused damage to significant portions of Ardmore Plaza. According to Yeh, 90-95 percent of the first and second floors sustained either smoke damage from the fire, water damage from the fire-fighting efforts, or chemical damage from the fire-fighting efforts. Yeh hired engineers to prepare architectural plans depicting proposed repairs to the fire-damaged areas of the building.[1] Then Yeh solicited bids for the repair work. Arkius was one of the contractors who submitted a bid.

On or about October 13, 2008, Yeh accepted the written proposal for repair work at Ardmore Plaza, which Arkius prepared. Both parties signed the agreement, which was referred to in this litigation as Contract No. 1. Under this contract, Arkius agreed to

---

[1] These architectural plans were admitted into evidence as exhibit 71 at trial. Arkius lodged exhibit 71 with this court.

2

perform certain enumerated work "per the plan"—the architectural plans referenced above (exhibit 71)—for a total price of $164,535. Arkius also agreed to complete the work in 65 days. Arkius did not complete the work in 65 days. It conceded at trial it never completed all work it agreed to perform under Contract No. 1. Notwithstanding that, Arkius claimed at trial that Yeh still owed money on Contract No. 1, and Yeh disputed this claim.

On or about December 31, 2008, Arkius prepared another written proposal for repair work to Ardmore Plaza. Arkius proposed to complete the enumerated repairs for a total cost of $158,382. Arkius did not specify the number of days it would take to complete this work. Neither party signed this proposal, which was referred to in this litigation as Contract No. 2. At trial, Arkius claimed Contract No. 2 represented additional repairs Yeh asked Arkius to perform, above and beyond those enumerated in Contract No. 1. Arkius stated it performed work under Contract No. 2 for which Yeh did not pay. Yeh countered that Contract No. 2 was duplicative of the repairs already required under Contract No. 1, and Arkius was seeking an additional $158,382 to complete the same repairs it already had agreed to complete for a total price of $164,535 in Contract No. 1.

In January 2009, the parties entered into two additional contracts under which Arkius agreed to repair water damage caused when it was performing roof repairs under Contract No. 1 and failed to cover the roof properly before a rainstorm. Water flooded into the building through cracks in the makeshift plywood frame Arkius installed to cover the open roof. On or about January 13, 2009, Yeh accepted the first of Arkius's two written proposals regarding repair of water damage for a total price of $156,034. This agreement, signed by both parties, was referred to in this litigation as Contract No. 3. On or about January 19, 2009, Yeh accepted Arkius's second written proposal regarding repair of water damage for a total price of $51,847. This agreement, signed by both parties, was referred to in this litigation as Contract No. 4. Contract No. 4 covered water damage repairs for a different portion of the building than Contract No. 3. According to Yeh, Arkius represented it would submit Contract Nos. 3 and 4 to its liability insurance

3

carrier, and use the money it expected to receive from the insurance company to complete the water damage repairs covered under Contract Nos. 3 and 4. Contract Nos. 3 and 4 also covered work outside the scope of the water damage repairs including certain electrical work.

On or about March 20, 2009, Arkius stopped performing repair work at Ardmore Plaza. Arkius's controller testified at trial that Arkius ceased work because Yeh did not pay what it owed under the contracts and Arkius did not have the funds to complete the work. Yeh countered that it paid Arkius what it owed for the work Arkius performed and did not owe anything further. Arkius concedes it did not complete all work described in signed Contract Nos. 1, 3 and 4, but maintains it completed all work described in unsigned Contract No. 2. Arkius claims it could not complete the work described in Contract No. 1 because Yeh failed to make certain repairs he had agreed to make, and some of Arkius's work was contingent upon these repairs Yeh had agreed to make.

On about March 23, 2009, Arkius sent Yeh (through Hyundae Health Center, Inc.) four invoices, one for each contract, stating Yeh owed $35,868 on Contract No. 1, $158,382 on Contract No. 2, $72,880 on Contract No. 3, and $40,861 on Contract No. 4. On June 4, 2009, Arkius filed this action against Yeh,[2] seeking to recover these amounts.

On or about July 10, 2009, Charles Yeh and Christine Yeh each filed an answer to Arkius's complaint, and Charles Yeh filed a cross-complaint against Arkius and its principal, Pius Kim. The cross-complaint alleged cross-defendants were liable for damages for failing to perform all agreed-upon repair work at Ardmore Plaza and for negligently causing the flooding and resulting water damage by failing to cover the roof properly before a rainstorm while conducting roof repairs. On June 17, 2010, Charles Yeh, Christine Yeh and Hyundae Health Center, Inc. entered into a release and settlement agreement with Arkius and Pius Kim under which they agreed to release all claims

---

[2] Other defendants originally named in this action, including Hyundae Health Center, Inc., defaulted. Charles and Christine Yeh are the only defendants who are parties to this appeal.

against Arkius and Kim in exchange for a payment of $35,000. In the general release, which includes a waiver of rights under Civil Code section 1542, Yeh agreed the $35,000 was "in full payment and satisfaction of any and all claims that Charles Yeh, Christine Yeh, and Hyundae Health Center, Inc. have against Arkius, Inc. and Pius Kim regardless of their nature and kind, including those arising out of The Cross-Action and its subject matter, as well as those claims which are known or unknown, suspected or unsuspected, or which do or may exist against Arkius, Inc. and Pius Kim regardless of their nature and/or arising out of or with respect to the work performed at the property located at 3625 W. Sixth Street, Los Angeles, California, including the decision to repair, replace, complete or not to repair, replace, or complete any portion of the same." On June 21, 2010, Charles Yeh dismissed with prejudice his cross-complaint against Arkius and Kim.

After the trial court granted Yeh's motion for nonsuit, and this court reversed on grounds not relevant to this appeal,[3] Arkius filed a first amended complaint on July 11, 2012, revising the amount it alleged Yeh owed on Contract No. 1 from $35,868 to $13,629.50.[4] The alleged amounts owed on the other three contracts remained the same.

Before trial, Arkius filed motions in limine seeking an order prohibiting Yeh from introducing evidence "based upon the previously dismissed Cross-complaints and the written settlement agreement executed by all defendants," among other things. On September 14, 2012, the trial court denied Arkius's motions in limine.[5]

---

[3] *Arkius Inc. v. Hyundae Health Center, Inc.* (Sept. 27, 2011, B228093) [nonpub. opn.].

[4] Arkius's first amended complaint is not included in either appellant's appendix or Yeh's appendix. We requested and received a copy of the first amended complaint from Arkius. On the court's own motion, we augment the record on appeal to include Arkius's July 11, 2012 first amended complaint.

[5] The trial court's September 14, 2012 minute order denying Arkius's motions in limine is not included in either appellant's appendix or Yeh's appendix. We obtained a copy of this minute order from the Los Angeles Superior Court. On the court's own motion, we augment the record on appeal to include the September 14, 2012 minute order.

A four-day court trial was held in this matter between October 31 and December 12, 2012, during which 10 witnesses testified, including Pius Kim and Charles Yeh. Arkius sought $279,452.50 in damages:  the revised amount of $7,329.50 on Contract No. 1, plus the amounts listed in his complaints on Contract Nos. 2-4 (as outlined above). Yeh disputed he owed Arkius any amount, but claimed, to the extent the court found otherwise, he was entitled to a credit in the amount of a payment he made to settle a claim on a mechanics lien that was recorded against Ardmore Plaza by a supplier who provided materials for Arkius's repair work.

Despite Arkius's repeated objections and references to the release and settlement agreement, the trial court allowed Yeh to present evidence of Arkius's negligence in causing the flooding and resulting water damage by failing to cover the roof properly before a rainstorm while conducting roof repairs.  For example, Alex Valles, who originally worked for Arkius but stayed on to work for Yeh after Arkius walked off the job, testified at trial on behalf of Yeh.  Valles testified rainwater entered Ardmore Plaza and flooded the building because Arkius loosely placed plywood framing over the open roof instead of drilling it down.  According to Valles, the loose plywood slid around during the rainstorm, leaving gaps where rainwater collected on a temporary plastic covering and then leaked into the building.

On January 2, 2013, the trial court issued a tentative decision.  On January 9, 2013, Arkius filed a request for a statement of decision, asking the court to explain the factual and legal bases for its decision with respect to 130 controverted issues listed in the request.

On January 25, 2013, the trial court issued an 11-page "Decision After Trial," awarding Arkius $7,329.50, the amount it requested at trial on Contract No. 1.  The court declined to explain the factual and legal bases for each of the 130 controverted issues listed in Arkius's request for statement of decision, but did set forth the factual and legal bases for its decision.  The court found Contract No. 1 incorporated the architectural plans (exhibit 71) referenced above, and covered repairs to *all* fire-damaged areas of the building, not just the 2,500 square-foot area Arkius claimed Contract No. 1 covered.

6

Accordingly, the court concluded Arkius was "not entitled to any extra money for work done under Contract No. 2" because "Contract No. 1 already require[d] Arkius to do the work that [was] envisioned in Contract No. 2." Thus, the court denied Arkius's request for quantum meruit recovery under the unsigned Contract No. 2. The court also denied Arkius any recovery under Contract Nos. 3 and 4, concluding Arkius could only recover under Contract No. 1 because "the damage that was to be repaired under Contract[] Nos. 3 and 4 was due to Arkius' negligence in completing Contract No. 1." The court found Arkius proved Yeh owed $7,329.50 on Contract No. 1. The court declined to give Yeh a credit against that amount, either for payment of the supplier's mechanics lien or for Arkius's failure to perform some of the work required under Contract No. 1 because (1) "Charles Yeh was not a particularly credible witness" and "presented virtually no documentary evidence for his claims," and (2) Charles Yeh released all claims against Arkius in the June 17, 2010 release and settlement agreement.

On February 15, 2013, the trial court entered judgment in favor of Arkius and against Yeh in the amount of $7,329.50, plus attorney fees and costs subject to proof.

## DISCUSSION

### I. Arkius's Appeal

#### A. Contract Nos. 3 & 4

Arkius contends the trial court erred in denying Arkius any recovery under Contract Nos. 3 and 4 based on the court's conclusion Arkius could only recover under Contract No. 1 because the damage to be repaired under Contract Nos. 3 and 4 was due to Arkius's negligence in completing Contract No. 1. For the reasons explained below, we agree with Arkius's contention. Accordingly, we reverse the portion of the judgment on Contract Nos. 3 and 4 and remand the matter for further proceedings.

Although set forth in more detail above, we briefly summarize here the facts relevant to the parties' dispute regarding Contract Nos. 3 and 4. In or about late November 2008, while Arkius was performing roof repairs under Contract No. 1, Arkius failed to cover the roof properly before a rainstorm and water flooded into the building through cracks in the makeshift plywood frame Arkius installed to cover the open roof.

7

Ardmore Plaza sustained water damage as a result of Arkius's negligence in failing to cover the roof properly. In January 2009, understanding the manner in which the water damage to Ardmore Plaza was sustained, Yeh signed Contract Nos. 3 and 4, agreeing to pay Arkius to repair the water damage and to perform additional work not related to the water damage (e.g., electrical work) enumerated in these two contracts. As Yeh has acknowledged, Arkius performed some work under Contract Nos. 3 and 4. Arkius concedes it did not complete all work required under Contract Nos. 3 and 4. In June 2009, Arkius sued Yeh for payment under Contract Nos. 1-4. Yeh cross-complained for damages resulting from Arkius's failure to complete all work required under Contract Nos. 1, 3 and 4, and Arkius's negligence in performing roof repairs under Contract No. 1. In June 2010, in exchange for a payment of $35,000, Yeh settled and released all claims against Arkius arising out of Arkius's work at Ardmore Plaza, including Yeh's claim that Arkius's negligence caused water damage to Ardmore Plaza, and dismissed the cross-complaint with prejudice.

Arkius and Yeh agree that the release and settlement agreement did not preclude Yeh from presenting a defense to Arkius's claims for payment under Contract Nos. 3 and 4. For example, Yeh could present evidence and/or argue that Arkius did not complete all work required under Contract Nos. 3 and 4. Yeh also could present evidence—to the extent such evidence exists—and/or argue that the work Arkius did perform under Contract Nos. 3 and 4 was substandard or valueless, or any other defense to these contracts. (See *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1544-1547 [dismissal of cross-complaint with prejudice does not bar defendant from denying plaintiff's allegations in the complaint that plaintiff performed the contract].) The trial court did not make any findings regarding the amount of work Arkius performed under Contract Nos. 3 and 4 or the value of that work.

Where Arkius and Yeh disagree is whether Yeh could assert as a defense to Arkius's claims for payment under Contract Nos. 3 and 4 that Arkius caused the water damage and therefore Arkius cannot recover under Contract Nos. 3 and 4 at all. We agree with Arkius on this issue and conclude the trial court erred in allowing Yeh to

8

assert such as affirmative defense. First, Yeh signed Contract Nos. 3 and 4 and agreed to pay for the work, knowing that Arkius had caused the water damage. Second, Contract Nos. 3 and 4 covered some work outside the scope of the water damage repair (e.g., electrical work). Third, Yeh already had brought a negligence claim against Arkius in a cross-complaint, seeking damages resulting from Arkius's failure to cover the roof properly. Yeh accepted a payment from Arkius in exchange for the settlement and release of all claims in Yeh's cross-complaint and all other known or unknown claims arising out of Arkius's work at Ardmore Plaza. Yeh dismissed the cross-complaint with prejudice. (See *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1330 [dismissal of cross-complaint with prejudice bars defendant from asserting an affirmative defense to plaintiff's breach of contract claims that is not responsive to plaintiff's allegations of contract performance].) Based on all of these factors, Yeh's assertion that Arkius caused the water damage is not a permissible defense to payment under Contract Nos. 3 and 4.

We remand the matter for a retrial on Arkius's claims against Yeh in its first amended complaint for payment under Contract Nos. 3 and 4. Yeh may not defend against these claims by asserting the affirmative defense that Yeh should not owe Arkius any amount under Contract Nos. 3 and 4 because Arkius's negligence in performing roof repairs under Contract No. 1 caused the water damage to be remedied under Contract Nos. 3 and 4. Except for this limitation, Yeh may assert any other breach of contract defenses.

The trial court must determine whether Yeh owes Arkius any amount on Contract Nos. 3 and 4. If the court finds Arkius substantially performed under one or both of the contracts, Arkius is entitled to the contract price and Yeh is entitled to an offset for costs to correct any substandard work. (10 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 27:103, pp. 27-378-379.) If the court finds Arkius did not substantially perform, Arkius is entitled to compensation in quasi-contract for any benefit conferred on Yeh as a result

9

of Arkius's performance of work enumerated in Contract Nos. 3 and 4. (*Id.* at p. 27-382.)[6]

**B. Quantum meruit claim under Contract No. 2**

Arkius contends the trial court erred in denying quantum meruit recovery under the unsigned Contract No. 2 based on the court's finding Arkius already was required to perform the repair work enumerated in Contract No. 2 under the signed Contract No. 1.

"We generally apply an independent, or de novo, standard of review to conclusions of law regarding interpretation of [a contract]. 'The precise meaning of any contract . . . depends upon the parties' expressed intent, using an objective standard. [Citations.] When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible. [Citation.] . . . [¶] We review the agreement and the extrinsic evidence de novo, even if the evidence is susceptible to multiple interpretations, unless the interpretation depends upon credibility. [Citation.] If it does, we must accept any reasonable interpretation adopted by the trial court.'" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266-1267.) Because the interpretation does not depend upon credibility, we review the contracts and extrinsic evidence here de novo.

At trial, Arkius claimed Contract No. 1 covered fire damage repairs on only a portion of Ardmore Plaza (2,500 square feet), and Contract No. 2 covered fire damage repairs throughout the rest of the building. Yeh countered that Contract No. 1 covered the entire 7,500-square-foot-area that was damaged by fire.

Arkius prepared Contract No. 1 (and the other three contracts). A note on the bottom of the first page of Contract No. 1 states the proposal is based on the architectural plans (exhibit 71). Contract No. 1 does not state it is limited to a 2,500-square-foot-area of Ardmore Plaza. The architectural plans depict proposed repairs to fire-damaged areas

---

[6] Based on our resolution of this issue, we need not address Arkius's contention the trial court improperly failed to issue a statement of decision addressing "the factual or legal bases for offsetting Arkius's recovery due to a negligence claim that had already been settled and dismissed."

of the building including but not limited to the 2,500-square-foot-area. Pius Kim conceded in his trial testimony that the architectural plans depict proposed repairs to all three floors of the building, both inside and outside of the 2,500-square-foot-area. Moreover, Contract No. 1 lists certain work which is excluded because it is "not in the plan."

Contract No. 1, which was executed by Yeh on October 13, 2008, was due to be completed in 65 days. Pius Kim, Arkius's principal, testified he knew Yeh wanted the work under Contract No. 1 completed in this timeframe because he wanted to rent out the space.

Arkius did not prove that the work it claimed to have performed under the unsigned Contract No. 2 was outside the scope of the work it was required to perform under the signed Contract No. 1. Exhibits Arkius references depicting floor plans with different areas shaded do not establish Contract No. 1 was limited to a 2,500-square-foot-area rather than encompassing all fire-damaged areas. The trial court did not err in denying quantum meruit recovery under the unsigned Contract No. 2 based on the court's finding Arkius already was required to perform the repair work enumerated in Contract No. 2 under the signed Contract No. 1.

## I. Yeh's Appeal

### A. Credit for mechanics lien

Yeh contends the trial court erred in declining to credit the amount it paid on a supplier's mechanics lien ($13,291.55) against the amount the court found Yeh owed under Contract No. 1 ($7,329.50).

In its decision, the trial court stated, "Yeh is not entitled to an additional credit for payment of the mechanics liens" because he "released all such claims when he signed a comprehensive release and settlement agreement with Arkius in June 2010." We agree with the trial court's interpretation of the settlement and release agreement, which states any mechanics liens are Yeh's responsibility and will be paid by Yeh: "Charles Yeh, Christine Yeh, and Hyundae Health Center, Inc. each certify to the best of their knowledge that no liens exist against the proceeds of this settlement that are being paid to

11

them, including, but not limited to, attorney's liens, medical liens, mechanics liens, contractor's liens, insurance company liens, governmental liens and any other liens. To the extent that any such liens do exist, Charles Yeh, Christine Yeh, and Hyundae Health Center, Inc. and their attorneys each agree that they are the sole responsibility of Charles Yeh, Christine Yeh, and Hyundae Health Center, Inc. and will be paid in full by Charles Yeh, Christine Yeh, and Hyundae Health Center, and further agree to indemnify and hold the Releasees and their respective agents, employees, insurers, attorneys, and insurance companies free and harmless from any such liens and all damages, claims, and expenses incurred with respect [to] same, including, but not limited to all actual court costs, penalties and attorneys' fees."

### B. Offset of Arkius's recovery for water damage not repaired

Yeh contends Arkius's recovery under Contract No. 1 should be offset against the remaining work to be done to repair the water damage caused by Arkius's negligence. As discussed above, Yeh settled his claims for damages caused by Arkius's negligence for $35,000, and dismissed those claims with prejudice. He may not reassert those claims in response to Arkius's causes of action.

### DISPOSITION

The portion of the judgment denying Arkius recovery on Contract Nos. 3 and 4 based on Arkius's negligence in completing Contract No. 1 is reversed, and the matter is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Arkius is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.                    BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.