Filed 4/26/16 Schwarcz v. Rashididoust CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DAVID SCHWARCZ et al., | B264081 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC122512) |
| v. | |
| HAMID RASHIDIDOUST, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lawrence H. Cho, Judge. Affirmed.

Thompson Coburn, Julian Brew and Natalie Ikhlassi, for Plaintiffs and Appellants David Schwarcz and Caroline Schwarcz.

Garrett & Tully, Ryan C. Squire, Robert Garrett and John C. Tully, for Defendant and Respondent Hamid Rashididoust.

_____

After years of unsuccessful litigation with Helene Lederman over title to the Beverly Hills home she once agreed to sell them, David and Caroline Schwarcz filed this action to quiet title against Hamid Rashididoust, who purchased the property from Lederman while the Schwarczes' appeal in the earlier litigation was pending.  The trial court dismissed the action after sustaining Rashididoust's demurrer on the ground of res judicata.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *The Lederman-Schwarcz Lawsuit*[1]

The property at issue in this appeal is located on Hillcrest Road in Beverly Hills and was initially owned by Lederman and her husband.  The Ledermans separated in the mid-1980's and divorced in 1992 or 1993.  In 1991, prior to the divorce becoming final, Lederman's husband, an accountant who had stolen money from some of his clients, quitclaimed the property to his wife, subject to a number of liens arising from judgments against him and, in some instances, Lederman herself.

In 1999 David Schwarcz, an attorney who had represented one of the judgment creditors, told Lederman her home was in imminent danger of foreclosure and offered to help her avoid financial ruin.  He proposed Lederman sell the property to him and his wife, Caroline, at a reduced price of $125,000, with a second, conditional payment between $750,000 to $1.5 million, depending upon his success in resolving the liens.[2]  Schwarcz provided Lederman with a contract and client disclosures that "(1) failed to correctly reflect the terms of the parties' agreement; (2) were unnecessarily confusing and at times incomprehensible; and (3) were intended to placate Lederman while [he]  had no intention of actually complying with their terms." (*Lederman v. Schwarcz* (Nov. 19, 2008, B195615) [nonpub. opn.] at p. 5, fns. omitted.)  On April 21, 1999 Schwarcz

---

[1]    Our summary of the facts regarding this lawsuit is drawn from the opinion of Division Three of this court in *Lederman v. Schwarcz* (Nov. 19, 2008, B195615) [nonpub. opn].

[2]    In 1999 the Hillcrest property was worth between $1.6 and $1.65 million.  Liens on the property exceeded $1.2 million and may have been substantially greater.

arranged for Lederman to sign a grant deed transferring the property to a corporation set up by Schwarcz, which then transferred the property to the Schwarczes. As to the initial $125,000 payment, Schwartz told Lederman it would not be a good idea to hold the funds in her own name. Instead, he persuaded her to use that sum as a down payment on a condominium on Rexford Drive in which Lederman would live, although title would initially be held by the Schwarczes. After the risk of any judgments against her had passed, the Schwarczes would transfer title to the condominium to Lederman.

Lederman moved to the Rexford condominium and made monthly payments on the secured loan and paid homeowner association fees and taxes on the property using a partial payment of $60,000 from the Schwarczes. After a time, Lederman became frustrated with Schwarcz's failure to resolve the liens. To placate her Schwarcz agreed to make the monthly loan payments on the condominium while Lederman continued to pay the other costs. In December 2003, however, Lederman stopped waiting for the Schwarczes to pay the sums due under the agreement and filed a complaint against the Schwarczes for breach of contract and breach of fiduciary duty seeking damages and equitable relief (the *Lederman* action). In response Caroline Schwarcz brought an unlawful detainer action against Lederman and obtained a judgment evicting her from the Rexford condominium, as well as an award of $69,762 in damages.

During this time the Schwarczes continued to live in the Hillcrest house and eventually succeeded in removing the liens, mostly with funds obtained through refinancing the loans on the property. At the time the property was transferred to the Schwarczes, the amount due on the secured home loan was $275,000; after refinancing, the amount rose to $1.14 million. The exact amount paid to extinguish the liens was disputed; Schwarcz claimed a total of $2.8 million, while Lederman's expert testified the liens amounted to no more than $1.3 million. According to Schwarcz, the property was worth $3.725 million at the time of trial; the expert estimated a fair market value of $4.2 million.

Lederman's expert offered two alternative calculations of damages, one based on contract (totaling $4,155,992) and another based on breach of fiduciary duty

3

($4,529,992).  The expert's calculation of contract damages was based on the premise the parties' contract would be voided and the value, rather than possession, of the Hillcrest property would be returned to Lederman, while the Rexford condominium would belong to the Schwarczes.  In her breach of fiduciary duty damage calculation, the expert assumed the Rexford condominium had been acquired for a price of $425,000 and sold for $799,000.  The expert added the sum of $374,000 to the contract damages calculation (to reach the figure of $4,529,992) on the theory the Schwarczes should not be allowed to profit from their breach of fiduciary duty.

The jury returned a special verdict in the *Lederman* action finding the Schwarczes were liable for breach of contract, breach of fiduciary duty, fraud and conversion of Lederman's personal property left in the Hillcrest house.  The jury awarded Lederman $2,718,936 in economic damages and an additional $2 million in noneconomic damages.  A bifurcated trial on punitive damages resulted in an additional award of $500.  The court then held a hearing on Lederman's equitable causes of action and asked her counsel whether she would elect to "void" the contract or not.  Told she had elected to void the contract, the court declined to hear any further evidence and quieted title to both properties in Lederman with "no offsets and no reduction of damages."  The judgment, entered in September 2006, awarded Lederman both properties, subject to their current secured loans, and the full amount of the jury's damage award.

The Schwarczes appealed, contending the trial court had improperly allowed a double recovery by quieting title to both properties in Lederman and leaving the jury's award untouched.  In August 2007, while the appeal was pending, Lederman sold the Hillcrest property to Rashididoust for $3.68 million.  Rashididoust was fully aware of the pending appeal and was expressly advised by the Schwarczes the judgment in favor of Lederman was not yet final.

On November 19, 2008 Division Three of this court reversed the judgment in the *Lederman* action, finding the trial court's award erroneous because (1) the jury had not been instructed on the proper measure of damages when rescission is granted; (2) assuming the contract was void (and thus rescinded) and the Hillcrest property

4

belonged to Lederman, the Rexford condominium should have been awarded to the Schwarczes; and (3) the court had failed to allow the Schwarczes to present evidence of offsets arising from property improvements and the payment of valid liens. The court remanded the case "for further proceedings consistent with the views expressed in this opinion" (*Lederman v. Schwarcz, supra,* B195615 at p. 27), including "a redetermination of Lederman's economic damages under the rescission remedy she apparently elected" (*id.* at p. 25). In a footnote now hotly contested, the court cautioned, "We leave it to the trial court, however, to determine, in the first instance, whether Lederman is to be bound by her election to rescind the contract, and any effect of subsequent events on this election. Specifically, the parties have indicated that Lederman has sold the Hillcrest house. Whether she has done so, and whether having done so would prevent Lederman from electing a contract remedy, are issues for the trial court." (*Id.* at p. 25, fn. 34.) The court stated in a closing footnote, "Our reversal of the trial court's judgment does not undermine the jury's verdict regarding Attorney Schwarcz's liability; and our resolution of the appeal may be useful to the State Bar in any investigation it may choose to conduct." (*Id.* at p. 27, fn. 36.)[3]

The remittitur in the *Lederman* action issued in January 2009. In August 2010 the trial court ruled the issues at retrial would be limited to Lederman's economic damages following rescission of the contract.

2. *Schwarcz v. Rashididoust I*

In May 2010, while awaiting hearing on the scope of the issues to be tried on remand, the Schwarczes filed an action against Rashididoust to quiet title to the Hillcrest property on the ground the Court of Appeal had reversed the *Lederman* judgment, thus returning title to them. The trial court rejected this argument, instead sustaining without leave to amend Rashididoust's demurrer to the first amended complaint on the ground the issues raised in the quiet title action had already been adjudicated against the Schwarczes

---

[3]     Schwarcz was ultimately disciplined in 2013 by the State Bar for his failure to comply with rule 3-300 of the Rules of Professional Conduct and received a 60-day suspension of his license to practice law with two years of probation.

and in favor of Lederman, who had conveyed the property to Rashididoust. The court explained the only issues remaining to be tried on remand of the *Lederman* action concerned Lederman's economic damages. The case was dismissed in March 2011. The Schwarczes did not appeal.

3. *The Stipulated Judgment in Lederman v. Schwarcz*

In 2012 Lederman reached a settlement with the Schwarczes, the terms of which have not been disclosed in the instant litigation. Pursuant to the settlement, the parties executed a stipulation to vacate the September 13, 2006 judgment in the *Lederman* action that, "among other things, awarded title to a parcel of improved real property—423 S. Rexford Drive, Penthouse, Beverly Hills, CA 90212-4764 (the 'Rexford Property')—to Plaintiff Helene B. Lederman," and requested the trial court enter an order vacating that judgment. The stipulation further provided that as of July 30, 1999 Lederman "did not hold and does not hold" any interest in the Rexford property and confirmed that the Schwarczes continue to hold whatever rights in the Rexford property that they had held prior to the September 2006 judgment. The court entered an order to this effect on July 20, 2012, and the case was dismissed with prejudice on September 13, 2012. There was no mention of the Hillcrest property in either the stipulation or the court order.

4. *Schwarcz v. Rashididoust II—the Instant Litigation*

In May 2014 the Schwarczes filed a second complaint for quiet title, claiming they were the rightful owners of the Hillcrest property, and in June 2014 they recorded a lis pendens against the property. Rashididoust demurred to the complaint and filed a motion to expunge the lis pendens. The trial court granted the motion to expunge the lis pendens, finding the Schwarczes' claims were precluded by the Court of Appeal's decision in the *Lederman* action and by the superior court's dismissal with prejudice of *Schwarcz v. Rashididoust I.* The court also found the stipulation and order purporting to vacate the judgment "had the effect of dismissing only that part of the Lederman Action that remained to be tried in accordance with the Appellate Decision and remittitur."

6

Rashididoust's demurrer was sustained on the same grounds in April 2015, and the Schwarczes' quiet title action was dismissed with prejudice on April 20, 2015.

## CONTENTIONS

The Schwarczes contend this action is not precluded under the doctrine of res judicata by the appellate decision in the *Lederman* action or the dismissal with prejudice in *Schwarcz v. Rashididoust I* because the July 2012 trial court order vacating the judgment in the *Lederman* action and the subsequent dismissal of that action with prejudice constituted a material change of circumstances. According to the Schwarczes, those events returned the parties to their status before the litigation commenced and revived the deed recorded in their favor in 1999. The Schwarczes contend the dismissal of Lederman's action with prejudice now constitutes the proceeding that must be accorded preclusive effect. Had Rashididoust wished to avoid this result, they argue, he should have intervened in the *Lederman* action following the Court of Appeal's reversal of the judgment and remand to the trial court.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *Committee For Green Foothills v. Santa Clara Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando*, at p. 1081.) We also review de novo issues of statutory construction. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183; accord, *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson,* at p. 183; accord, *Favila,* at p. 224.)

### 2. *The Doctrine of Res Judicata (Claim Preclusion)*

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897; see generally *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824-825 [discussing differences between claim and issue preclusion]; [4] Code Civ. Proc., § 1908 [codifying doctrine of res judicata].) The doctrine applies when (1) the issues decided in the prior adjudication are identical with those presented in the later action; (2) there was a final judgment on the merits in the prior

---

[4] "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether. [¶] *Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.] There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party." (*DKN Holdings LLC v. Faerber, supra,* 61 Cal.4th at p. 824.)

action; and (3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication.  (*Needelman v. DeWolf Realty Co.*, *Inc.* (2015) 239 Cal.App.4th 750, 757; see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 ["'[a]s generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy"'"].)  "If claim preclusion is established, it operates to bar relitigation of the claim altogether."  (*DKN Holdings,* at p. 824.)

California courts apply the "'primary rights' theory'" to determine whether two proceedings involve identical causes of action for purposes of claim preclusion.  (*Boeken v. Philip Morris USA, Inc., supra,* 48 Cal.4th at p. 797; accord, *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1530.)  "'For purposes of res judicata, a cause of action consists of the plaintiff's primary right to be free from a particular injury, the defendant's corresponding primary duty and the defendant's wrongful act in breach of that duty.  [Citation.]  The violation of a primary right gives rise to only a single cause of action.'"  (*Federal Home Loan Bank,* at p. 1530.)  Under this theory, "'[t]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant.  [Citation.]  Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.  "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief."  [Citations.]'  Thus, . . . the determinative factor is the harm suffered.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."  (*Boeken*, at p. 798; accord, *Federal Home Loan Bank,* at pp. 1530-1531.)

Application of the doctrine of res judicata "is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation."  (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.)  It promotes judicial economy by "'"preclud[ing] piecemeal litigation founded on splitting a single cause of action or relitigation of the same cause of action on a different legal

9

theory or for different relief"'"" (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 897) and prevents "'a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination'" (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228, quoting *In re Crow* (1971) 4 Cal.3d 613, 622-623; see *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1327).

The doctrine of res judicata, however, "'does not apply where there are changed conditions and new facts which were not in existence at the time of the prior judgment, and upon which such judgment was based.'" (*Neil Norman, Ltd. v. William Kasper & Co.* (1983) 149 Cal.App.3d 942, 947.) It "extends only to the facts in issue as they existed at the time the judgment was rendered and does not prevent a reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties. When other facts or conditions intervene before a second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action." (*American Broadcasting Cos. v. Walter Reade-Sterling, Inc.* (1974) 43 Cal.App.3d 401, 408, italics omitted; accord, *City of v. Oakland Police & Fire Retirement System, supra,* 224 Cal.App.4th at p. 230.)

3. *The Order Vacating the Judgment in the Lederman Action and Subsequent Dismissal of that Action Do Not Constitute Changed Circumstances for Purposes of This Lawsuit*

The Schwarczes contend their current action is not precluded by *Schwarcz v. Rashididoust I* because the trial court order vacating the judgment in the *Lederman* action and the subsequent dismissal with prejudice of the action constituted changed circumstances that altered the legal significance of the judgment in favor of Rashididoust. According to the Schwarczes, the trial court in that action made a critical finding that "the complaint is uncertain . . . [and] admits that title to the property remains the subject of a pending action." The court relied on that finding, they argue, in combination with the

10

interim order in the *Lederman* action that only damages would be tried on remand, to conclude the quiet title action was precluded at that time.

The Schwarczes misrepresent the trial court's ruling in *Rashididoust I*. The purported finding cited by the Schwarczes appears in the court's summary of Rashididoust's argument in support of his demurrer to the complaint. Rashididoust had asserted the quiet title complaint was fatally uncertain because it admitted that title to the property remained in dispute between the Schwarczes and Lederman. In its February 8, 2011 ruling on the demurrer, however, the trial court rejected that argument. Instead, it took judicial notice of the appellate decision in the *Lederman* action and observed the Court of Appeal had "remanded only the issue of damages," an issue scheduled to be tried soon thereafter. The trial court then stated, "The issues related to the Quiet Title Action have already been adjudicated in the [appellate] decision in favor of Mrs. Lederman, who conveyed the property to the defendant." Based on this interpretation of the appellate decision, the trial court, citing *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813, concluded the Schwarczes were barred from relitigating their claim to title to the Hillcrest property through operation of collateral estoppel or issue preclusion. Accordingly, the court sustained the demurrer without leave to amend.

Whether the trial court in *Schwarcz v. Rashididoust I* was correct that the issue of title to the Hillcrest property had been finally determined against the Schwarczes and properly applied the doctrine of collateral estoppel or issue preclusion to bar their quiet title action are issues the Schwarczes could have raised if they had elected to appeal the order sustaining Rashididoust's demurrer without leave to amend and dismissing that action. They did not, and the judgment entered against them in *Schwarcz v. Rashididoust I* is final and binding. (See *Sukut Construction, Inc. v Cabot, Cabot & Forbes Land Trust* (1979) 95 Cal.App.3d 527, 530-531 ["'[i]f a title or interest in property was in issue in a former action, the judgment is conclusive in later proceedings involving the same title or interest'"].) The subsequent settlement of the *Lederman* action does not constitute new facts or changed circumstances as those terms are used to define conditions relieving the consequences of res judicata: Nothing had changed

11

between the parties involved in *Rashididoust I*; the issues in *Rashididoust II* are not materially different from those in the prior litigation. (See *Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 ["'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery'"]; see also *Roos v. Red* (2005) 130 Cal.App.4th 870, 888 [new evidence normally does not bar application of doctrine of claim/issue preclusion]; *Robert J. v. Leslie M.* (1997) 51 Cal.App.4th 1642, 1647-1648 [same].) Lederman and the Schwarczes' "confidential" settlement and stipulation to vacate the judgment in the *Lederman* action may have altered the legal rights between them as of July 2012, but they cannot, and do not, retroactively affect the validity of a previously entered and final court judgment.

The Supreme Court's decision in *Keidatz v. Albany* (1952) 39 Cal.2d 826, discussed by counsel for the Schwarczes at oral argument but not cited in the Schwarczes' briefs, does not compel a different result. In the *Keidatz* opinion Justice Traynor explained the res judicata effect of a judgment entered following an order sustaining a demurrer, as occurred in *Rashididoust I*: "It is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts. [Citations.] Moreover, even though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar. [Citations.] If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint." (*Keidatz*, at p. 828.)

Here, the amended complaint in *Rashididoust I* alleged that, as a result of the appellate decision in the *Lederman* action, the judgment in favor of Lederman was reversed and title to the Hillcrest Property was again vested in the Schwarzces "as if they had retained title *continuously*, retroactively to July 1999." The pleading further alleged,

12

"because the November 19, 2008 Court of Appeal Judgment was a reversal on <u>all</u> grounds, Rashididoust does <u>not</u> now have, and <u>never</u> has had, valid legal title to the Hillcrest Property." As discussed, the trial court disagreed with that interpretation of the appellate decision, finding instead the decision had conclusively determined Lederman, not the Schwarczes, owned the Hillcrest property in August 2007 when Lederman sold the property to Rashididoust.

The complaint in *Rashididoust II* similarly alleged that the appellate decision in the *Lederman* action reversed the judgment and "any and all relief awarded under that Judgment" to Lederman. It also added the allegation that the trial court had thereafter— that is, pursuant to the July 2012 settlement between Lederman and the Schwarzces— entered an order vacating the judgment in its entirety. However, if, as was alleged in both *Rashididoust I* and *Rashididoust II* the appellate decision in *Lederman* reversed the original trial court judgment against the Schwarzces in its entirety, the additional act of vacating that nonexistent judgment was essentially meaningless, at least as it relates to an interpretation of the legal effect of the appellate court decision. Accordingly, the ground on which the trial court in *Rashididoust I* sustained the demurrer—its conclusion the appellate decision in the *Lederman* action had established that Lederman owned the Hillcrest property in August 2007—was equally applicable to *Rashididoust II*; and the trial court properly accorded its earlier decision res judicata effect.

The Schwarczes' parallel assertion Lederman's dismissal of her action bars any collateral attack on their claim to the property is equally unfounded. While a dismissal with prejudice entered by the consent or stipulation of the parties after settlement of a case can operate like a retraxit, or withdrawal, of the lawsuit that returns the parties to their prelitigation positions and bars a new action between them or their privies, the scope of the bar is dictated by a factual inquiry into the terms of the settlement. (See *Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 67; *Morris v. Blank* (2001) 94 Cal.App.4th 823, 830.) More precisely, to determine which causes of action or issues are barred as a result of the retraxit, the court entering the dismissal must make specific findings as to terms of the underlying settlement. (See, e.g., *Nakash,* at p. 67 ["the issue of the scope of

13

the settlement agreement is factual and must be resolved before that to which res judicata assertedly applies can be determined"]; *Neil Norman, Ltd. v. William Kasper & Co., supra,* 149 Cal.App.3d at pp. 948-949 [failure of trial court to make findings of fact relating to scope of underlying settlement agreement negated alleged preclusive effect of dismissal with prejudice]; see generally *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America, supra,* 133 Cal.App.4th at p. 1331 ["It is therefore incorrect to suggest, as some courts have [citation], that res judicata principles somehow supplant the retraxit doctrine; to the contrary, as stated, res judicata principles are applied to ascertain the scope and effect of the retraxit and thus the principles operate together"].)  Because the Schwarczes elected to maintain the confidentiality of their settlement agreement with Lederman and not to seek findings as to its preclusive effect from the trial court in that action, even if, contrary to the analysis above, Lederman's dismissal might otherwise have some legal significance in *Rashididoust II*, there was no basis for the trial court to accord it preclusive effect.

### DISPOSITION

The judgment is affirmed.  Rashididoust is to recover his costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.                         BLUMENFELD, J.[*]


---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.