Filed 12/8/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHARLES F. PETERSON, | B334987 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. 22STCV254641 |
| JINSHU ZHANG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed and remanded.

Law Offices of Charles F. Peterson and Charles Peterson; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Plaintiff and Respondent.

FTW Law Group and Felix T. Woo for Defendant and Appellant.

————————————————

This case began as a neighbor-to-neighbor disagreement about a tree branch.  The neighbor would not cut the branch on a pine tree, so Jinshu Zhang submitted a "view restoration application" to his homeowners association, which retained Charles Peterson to *mediate* the dispute about the branch.  When the association dismissed Zhang's application, Zhang sued mediator Peterson for a breach of fiduciary duty.  Zhang lost against Peterson because Zhang could not establish this mediator owed him a fiduciary duty.  Zhang did not appeal his defeat.

After Zhang's lawsuit ended in failure, Peterson sued Zhang.  We now confront Peterson's case for malicious prosecution against Zhang.  As the defendant in Peterson's malicious prosecution action, Zhang filed an anti-SLAPP motion, which the trial court rightly denied.

We affirm this denial of Zhang's special motion to strike.  Our main holding is that a discretionary sanctions ruling did not trigger the so-called "interim adverse judgment rule," which Zhang hoped would shield him from Peterson's malicious prosecution suit.  We explain the nature of this rule and why we reject Zhang's ill-conceived effort to broaden it.  Zhang's other attacks on the trial court ruling come to naught.  Undesignated citations are to the Code of Civil Procedure.

I

In evaluating Zhang's anti-SLAPP motion, we accept as true the allegations in Peterson's complaint and his supporting evidence.  (See *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)

Zhang's neighbor, the one who owned the tree branch, was Travers Wood.  Wood is not a party to this appeal.  Rather, our parties are Zhang and mediator Peterson.

Zhang and Peterson are lawyers and homeowners in Palos Verdes Estates. Both belonged to the Palos Verdes Homes Association, which we refer to as the Association.

The Association had the right to enter private properties in this neighborhood and to trim trees. It provided a mediation and arbitration procedure to resolve tree disputes between neighbors and, to this end, hired a mediator on an as-needed basis. If mediation did not resolve the dispute, the mediator would arbitrate the matter. Homeowners could appeal the arbitration result to the Association's board for a final decision.

The Association retained Peterson as a mediator for this dispute resolution program. Peterson owned a mediation firm called Stonebridge Mediation.

Zhang bought his Palos Verdes Estates home in 2000. The coastline view was a major factor for Zhang, who alleged this view added substantial value.

Peterson resolved two complaints Zhang submitted in 2007. These concerned flora on property belonging to Zhang's neighbor Jimmy Kim.

In October 2013, Zhang submitted a third view restoration application to the Association. In his application, Zhang claimed a pine tree on Wood's property blocked his view. This is the pine tree sparking the current lawsuit. The Association retained Peterson to mediate this dispute. Peterson met with Zhang and Wood. Wood agreed to trim the offending branch. Relying on Wood's promise, Zhang withdrew his application.

In July 2017, Zhang sent another view restoration application to the Association, claiming Wood had not trimmed the pine tree. The Association again retained Peterson to resolve the dispute.

Peterson met with Zhang, who understood from this meeting Peterson would tell Wood to remove the branch, and that removing it would not damage the tree.  Peterson met with Wood, who agreed to trim the pine tree but would not remove the entire branch.  Peterson asked if Zhang would accept this proposal.  Zhang said no.  If Wood refused to cut the branch, Zhang wrote: "I am ready to fight him all the way at the Board level and, if necessary, in the Superior Court."

Peterson offered to supervise the trimming of Wood's pine tree so Zhang could recover as much of the view as possible.  Peterson said the tree branch was large and removing it could harm the tree or cause instability on the slope.  He also cautioned Zhang the Association's board "could deny [his] application outright on several grounds:  not a primary view, not a significant obstruction, not an adjacent property, same view from different floor unobstructed."  Peterson continued:  "All these points will be argued, and as you know, taking this to court will be a time-consuming and expensive undertaking."

Zhang disputed each point and insisted the entire branch had to go.

In early August, Peterson reiterated his offer to supervise the trimming of Wood's tree.  His email told Zhang that, if Zhang or Wood were unhappy with his decision about the extent of needed trimming, they were free to appeal Peterson's decision to the Association's board.

Thereafter, on August 4, 2017, Zhang told Peterson that if Peterson did not issue an arbitrator's award in Zhang's favor, Zhang would sue Peterson, the Board, and tree owner Wood.

Peterson then spoke to Sidney Croft, the Association's general counsel, about the impasse between Zhang and Wood.

4

Peterson told Croft he planned to prepare an arbitration award denying Zhang's application "on the grounds he had previously mentioned to Zhang, *i.e.*, that the view was not significantly obstructed, that the view he was seeking was not his primary view, and/or that he did not qualify for the program because his property was not adjacent to the tree owner's property." He also mentioned Zhang's threat to sue the Association if the arbitration decision did not favor Zhang.

Croft unilaterally decided the Association should not proceed with Zhang's application. Croft sent Zhang a letter stating the Association was unable to proceed with Zhang's application because Zhang's property did not *adjoin* Wood's property. Croft wrote the Association could resolve only disputes concerning *adjoining* properties.

Zhang rejected this "adjoining properties" rationale as a pretext for a bad faith denial of his claim. He found an article Peterson published in 2014 that Zhang interpreted to mean the Association did *not* have an "adjoining properties" requirement.

Zhang sued Peterson, Croft, and the Association in 2017. His claims were breach of contract against the Association and breach of fiduciary duty against the Association, Croft, and Peterson. Zhang alleged Peterson "is, and at all relevant times hereto, was a member of the Board of Directors and an officer of [the Association]" and "an agent, servant or employee of [the Association], hired to act on behalf of [the Association]." Zhang's complaint alleged the Association's website listed Peterson's name under its "Board of Directors."

Zhang further alleged Peterson, Croft, and the Association "had a fiduciary duty to [Zhang] to protect his view right under the [Association's Covenants, Conditions, and Restrictions] by

5

accepting and processing his tree applications in good faith and ordering the cutting of the offending tree branches that obstruct his view." Croft, Peterson, and the Association breached this fiduciary duty, Zhang alleged, by "unscrupulously fabricat[ing] a prerequisite of 'adjoining properties' with full knowledge of its falsehood."

According to Zhang, the reason for this fabrication was "rabid racial discrimination" against him. Zhang claimed the Association had repeatedly rejected his remodeling designs on "neighborhood compatibility grounds," while accepting similar remodeling designs from his Caucasian neighbors.

The linchpin of Zhang's fiduciary duty suit against Peterson was Zhang's factual premise that Peterson indeed was a director of the Association, for only directors and the like owed fiduciary duties in this setting. (See *Coley v. Eskaton* (2020) 51 Cal.App.5th 943, 958 [directors of homeowner associations owe members a fiduciary duty].) Zhang's complaint alleged no other legal reason why Peterson would owe Zhang a fiduciary duty.

In other words, whether or not Peterson was a director of the Association became a key factor in the viability of Zhang's fiduciary duty suit against Peterson.

In February 2018, Peterson filed an anti-SLAPP motion to strike Zhang's complaint, arguing Zhang's breach of fiduciary duty claim arose only from Peterson's role mediating the dispute. Peterson swore in his declaration that he was not and never had been a director or employee of the Association. In April 2018, the trial court heard and denied Peterson's anti-SLAPP motion. Peterson appealed the trial court's order. In November 2019, the Court of Appeal affirmed the trial court's denial of Peterson's motion. (*Zhang v. Peterson* (Nov. 20, 2019, B290291) [nonpub.

opn.].)  The court reasoned Peterson's alleged conduct was not in furtherance of Peterson's rights of petition or free speech. Peterson's anti-SLAPP motion thus failed on the first prong of the test.  (*Id.*)  The court did not reach prong two, and so did not appraise the merits of Zhang's case against Peterson.  (*Id.*)

While Peterson's anti-SLAPP appeal was pending, in January 2019, the Association and Croft settled with Zhang by paying him $35,000 and by agreeing to rehear his 2017 view restoration application.  The Association agreed not to deny Zhang's application on the basis his property did not adjoin Wood's.

Peterson, however, did not settle with Zhang.

In January 2020, Peterson filed a motion for sanctions under section 128.7, seeking the termination of Zhang's action because it lacked evidentiary support.  The motion also sought monetary sanctions of $25,000.  Peterson's motion argued there was no evidentiary basis for a fiduciary relationship between Zhang and Peterson.

Zhang's opposition set forth the evidence he relied on to show Peterson was an agent or officer of the Association.  Zhang listed five kinds of evidence.

First, in a written March 2016 arbitration ruling on another view restoration application, Peterson referred to himself as "the [Association] arbitrator" instead of an independent neutral, and the decision was printed on the Association's official letterhead.

Second, the February 2014 retainer and fee agreement between Peterson and the Association seemed to contemplate an employment relationship, as the agreement provided for Peterson to provide "services to [the Association]" rather than to the

7

parties of tree disputes. Peterson was to be paid not by the parties but by the Association.

Third, Zhang pointed to the numerous minutes of the Association's board meetings reflecting Peterson's regular attendance and active participation in the formulation of Association policies.

Fourth, Peterson did not keep mediation materials confidential: he regularly apprised Croft and the Association's board on the status of view restoration applications and did not make his decisions independently from the Association.

Fifth, and most significantly for present purposes, the Association's website listed Peterson's name under its "Board of Directors," along with Peterson's photo.

We describe this website evidence in some detail because of its prominence in this appeal.

The Association's website included Peterson among the "Faces of [Palos Verdes Homes Association]." Under this "Faces of [Palos Verdes Homes Association]" heading was a subheading in bold: "**Board of Directors**." Following this subheading were five photos of faces. Accompanying each was text identifying each person as President, Vice President, or Director, and giving a concise bio.

Scrolling down the webpage, viewers encountered a sixth photo. This picture was of Peterson, with these bold and italicized words in the original:

"**Charlie Peterson**

"*Stonebridge Mediation*

"Charles Peterson has been a member of the association for twenty-five years. He has been the association's View Dispute Arbitrator/Mediator since 2006. He is a principal with the

8

Stonebridge Mediation Group in Rolling Hills, a member of the California State Bar since 1986, and a shareholder of the CFPViewLaw Firm."

As is apparent from this description, the webpage did *not* identify Peterson as a director or officer. Rather, it described Peterson as the Association's "View Dispute Arbitrator/ Mediator."

In July 2020, the trial court denied Peterson's sanctions motion in a one-sentence order that offered no reasoning.

A jury trial on Zhang's breach of fiduciary duty claim against Peterson began in August 2021. After Zhang's opening statement, Peterson moved for a nonsuit, arguing Zhang had said nothing about evidence to support his single cause of action for breach of fiduciary duty. The court granted the motion, ended the trial, and entered judgment for Peterson. Zhang did not appeal.

In November 2022, Peterson sued Zhang for malicious prosecution. Peterson alleged Zhang's suit was baseless because Peterson owed Zhang no fiduciary duty and Zhang knew it. Zhang was aware in February 2018 that Peterson was *not* a director of the Association, Peterson alleged, and he, Peterson, thereafter repeatedly had alerted Zhang to that fact. Moreover, Peterson alleged, Zhang knew of Croft's sworn declaration and deposition testimony that Peterson was not an Association director, officer, or employee. Nonetheless, Zhang made no effort to confirm or refute the evidence that Peterson in fact was not an Association director.

Zhang responded by filing a special motion to strike under section 425.16.

9

The court signed a 15-page ruling denying Zhang's motion. It found the Association hired Peterson as an independent contractor to serve as its mediator and arbitrator. Peterson never ruled on the dispute over Wood's branch, the court found, because the mediation ended in an impasse and the Association, not Peterson, had denied Zhang's application before Peterson could take further action.

The court ruled Zhang's anti-SLAPP motion satisfied prong one, which Peterson did not dispute. The court thus moved to prong two, where the burden shifted to Peterson to prove his case had minimal merit.

The trial court held Peterson satisfied the second prong by proving his case indeed did have at least minimal merit. Peterson offered evidence Zhang lacked probable cause to maintain the underlying action against Peterson, which validated Peterson's malicious prosecution case. Zhang's theory had been that Peterson owed Zhang a fiduciary duty because Peterson was a director or officer of the Association, but Peterson then produced evidence he never served in either role. Once Zhang received this evidence, Zhang had no reasonable basis, absent further investigation, to maintain the breach of fiduciary action against Peterson.

The trial court found Peterson's evidence contradicted Zhang's premise that Peterson was an officer or director of the Association. Peterson's evidence consisted of:

1. Multiple declarations and verified discovery responses from Peterson;
2. Peterson's retainer agreement and 1099 tax forms;
3. A declaration and deposition testimony by the Association's general counsel Croft;

10

4.  Board meeting minutes.

The court ruled this evidence satisfied Peterson's burden of demonstrating his malicious prosecution case against Zhang had at least minimal merit.  This proof, as a prima facie matter, showed Zhang had no reasonable grounds for maintaining his action against Peterson.  Zhang offered no evidence negating Peterson's showing as a matter of law.

In addition, Peterson offered evidence of Zhang's malice.

The trial court thus denied Zhang's anti-SLAPP motion. Zhang appealed.

## II

The trial court properly denied Zhang's motion because Peterson proved his case had at least minimal merit.  This factual showing defeated Zhang's anti-SLAPP motion.

Zhang's most substantial objection to this ruling is that he previously beat Peterson's motion for sanctions, and so—as a preclusive matter—his victory there should crush Peterson's later malicious prosecution suit, which Zhang argues just rehashes the same old evidence as before.  Zhang claims the "interim adverse judgment rule" requires this result.  But for good reason no precedent applies this rule to a motion for sanctions under section 128.7, which was the interim result Zhang would enthrone.  Trial courts can deny such motions for reasons that do not prove the underlying lawsuit had merit.  The trial court thus was right to reject Zhang's call for a preclusive effect and to conclude Peterson's proof showed his malicious prosecution suit had at least minimal merit.

Zhang's other assaults on the trial court's analysis also fail.

11

## A

Analysis of special motions to strike proceeds in two steps, but the first step is not at issue. Peterson concedes Zhang's anti-SLAPP motion satisfied prong one, because a malicious prosecution case is a cause of action arising from protected activity within the meaning of section 425.16, subdivision (b)(1). (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735.)

So we move to prong two, where the burden shifted to Peterson to show his malicious prosecution claim had at least minimal merit. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

This second step required Peterson to demonstrate a probability of success on his claim for malicious prosecution. In this summary-judgment-like process, courts do not weigh evidence or resolve conflicting factual claims. Instead they evaluate whether plaintiffs like Peterson have stated legally sufficient claims and whether these plaintiffs have made a prima facie evidentiary showing sufficient to sustain a favorable judgment. Courts are *required* to accept Peterson's evidence as true. The task is to evaluate Zhang's showing only to determine if it defeats Peterson's claim as a matter of law. If Peterson's lawsuit has even minimal merit, Zhang's motion fails and Peterson's suit against him proceeds. Appellate review is independent. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster*).)

Zhang's admissible evidence is pertinent only if it would defeat Peterson's malicious prosecution claim *as a matter of law*. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.)

Some opinions tell us malicious prosecution is a disfavored tort.  (E.g., *Babb v. Superior Court* (1971) 3 Cal.3d 841, 847.)  Others say, however, the tort can yield compensation that can be "well justified and significant in amount."  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 688–689 (*Crowley*).)  Generalities about this tort thus are not very helpful.  We turn to specifics.

Peterson had to offer evidence supporting the six elements of a malicious prosecution action:

1. Zhang was actively involved in bringing or continuing his suit against Peterson.  Zhang did not dispute this.
2. Peterson won the underlying suit.  Zhang conceded this.
3. No reasonable person in Zhang's circumstances would have believed there were reasonable grounds for starting or continuing the suit against Peterson.
4. Zhang acted primarily for a purpose other than succeeding on the merits of the claim.
5. Defending against Zhang's lawsuit harmed Peterson.  Zhang did not dispute this.
6. Zhang's conduct was a substantial factor causing Peterson's harm.  Zhang did not dispute this.  (CACI No. 1501.)

The trial court's lengthy written analysis concluded Peterson's proof sufficed.  The court therefore denied Zhang's anti-SLAPP motion.

B

On appeal, Zhang challenges Peterson's showing only on elements three and four:  whether reasonable people in Zhang's circumstances would have believed there were reasonable grounds for maintaining the suit against Peterson; and whether Zhang acted primarily for a purpose other than succeeding on the merits of the claim.  We treat these two elements seriatim.

13

1

Zhang argues his case against Peterson was reasonable because Zhang had grounds to believe Peterson was a director or officer of the Association and thus owed members like Zhang a fiduciary duty.  In particular, Zhang contends he had reasonable grounds for believing Peterson was a director.

a

Zhang's most extensive argument in this vein is his claim the "interim adverse judgment rule" should save him.

The interim adverse judgment rule is peculiar to malicious prosecution cases.  It states that a trial court *judgment or verdict* in favor of the plaintiff in the underlying case (unless obtained by fraud or perjury) establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court.  The rule recognizes claims that have succeeded at a hearing on the merits, even if that result is later reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney necessarily would have recognized their frivolousness.  In other words, if a claim succeeds at a hearing on the merits, then the claim cannot be totally and completely without merit and a later malicious prosecution suit must founder.  The rule arose from cases that had been resolved after trial, but it has been extended to the denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case.  (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776–777 (*Parrish*).)

The *Parrish* opinion attributed this rule to the *Wilson* decision.  (*Parrish, supra,* 3 Cal.5th at p. 771 [citing *Wilson, supra,* 28 Cal.4th at p. 818].)

14

The interim adverse judgment rule does not apply here because Zhang's interim ruling was not a *judgment* (or *verdict*) adverse to Peterson. Peterson brought a motion for sanctions under section 128.7 against Zhang, and the trial court denied it without comment. This denial did not culminate in a *judgment* in Zhang's favor. Instead, Zhang ultimately lost his case against Peterson in a nonsuit, and the only judgment ended up in *Peterson's* favor.

More profoundly, the denial of a motion for sanctions does not necessarily reveal anything about the merit of a lawsuit. Trial courts have "broad discretion" over whether to grant or deny such motions. (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441 (*Peake*); cf. *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 997 [to justify a reviewing court's interference with a sanction award, the trial court must abuse the "broad discretion" accorded it].)

As the Supreme Court has recognized, a trial judge may deny such a motion on grounds that include a high professional regard for the targeted lawyers and what the trial court regards as widespread esteem for the honorable reputation of their law firm.

A case in point is *Crowley*, which involved a motion for sanctions under section 128.5, not section 128.7. (*Crowley*, *supra*, 8 Cal.4th at pp. 688–689, fn. 12.) These sanctions motions are allied and are similarly discretionary. (See, e.g., *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 438 [courts review sanctions motions under both sections 128.5 and 128.7 for abuse of discretion]; *Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc.* (1998) 65 Cal.App.4th 1131, 1136 ["These sanction statutes [§§ 128.7 and 128.5] were crafted by the Legislature to

15

strike a balance between competing interests: the need to control improper litigation 'tactics' and the desire to avoid chilling vigorous advocacy"].)

In *Crowley*, the Supreme Court described how a trial judge declined to sanction "defendant attorneys, extolling them as persons 'well known to this Court to be attorneys of great excellence and integrity.'" (*Crowley*, *supra*, 8 Cal.4th at pp. 688–689, fn. 12.) Indeed, the Supreme Court said, "The case at bar presents a striking example of this phenomenon." (*Ibid.*)

This sort of trial court decisionmaking is not surprising. One of the many benefits of a sterling professional reputation is that trial judges, at an early stage of a litigation, may find it hard to believe that a truly honorable lawyer is appearing on a case of absolutely no merit. Yet that may be the trial judge's ultimate conclusion after hearing all the evidence and ruling after trial. (See *Crowley*, *supra*, 8 Cal.4th at pp. 688–689, fn. 12 [the same trial judge ultimately concluded " 'The claim of Mrs. Katleman now before the Court is absolutely without merit. Her willingness to commit perjury for the pecuniary gain of obtaining Mr. Katleman's estate is overwhelming' "].)

The discretionary nature of a denial of a sanctions motion is apparent in Zhang's case. The trial court denied Peterson's motion to sanction Zhang with no written or reported explanation. We assume the court acted properly, but we have no idea what prompted the ruling. Perhaps the court simply judged Peterson's request for $25,000 to be offensive overreaching.

Because the denial of a sanctions motion does not necessarily show the underlying lawsuit had some merit, this court ruling does not qualify as an interim *judgment* adverse to Peterson.

16

Zhang is unable to find any case support for his proposal to expand the interim adverse judgment rule to include the denial of sanctions motions.  In other words, Zhang asks us to take an unprecedented step.

The sole case on point is contrary to Zhang's argument.  That case is *Wright v. Ripley* (1998) 65 Cal.App.4th 1189 (*Wright*), in which Justice Bedsworth wrote that "issues resolved on a *routine* sanction motion are *not* entitled to preclusive effect in a later action for malicious prosecution."  (*Id.* at p. 1191, italics added.)

Zhang seeks to distinguish *Wright* by arguing there was "nothing 'routine' " about Peterson's sanctions motion.  According to Zhang, Peterson's motion was extraordinary because it sought pretrial termination of Zhang's case.

Zhang's argument against *Wright* is unfounded.  In *Wright*, the trial court made "no finding the case was supported by probable cause."  (*Wright, supra*, 65 Cal.App.4th at p. 1192.)  So too in this case, where the trial court made no findings but simply denied Peterson's motion without comment.  This trial court's conduct accorded with Justice Bedsworth's observation that the "majority of sanction motions can be resolved summarily . . . ." (*Id.* at p. 1194.)  The ruling against Peterson's sanctions motion was summary indeed.  Like the denial of the motion in *Wright*, the denial in this case could impose no preclusive effect on the later lawsuit for malicious prosecution.

In sum, we reject Zhang's effort to clash with *Wright* and to enlarge the interim adverse judgment rule.

b

Zhang's remaining attacks on element three are less substantial.

17

Zhang claims the association and its general counsel settled with Zhang for $35,000 and concludes this settlement showed Zhang's case against *Peterson* had merit. This argument is illogical, for a settlement with defendants X and Y cannot prove a fact about defendant Z, even supposing the settlement established *any* facts, which Zhang has not shown. A typical settlement is a compromise with no admission of fault or wrongdoing. Nothing takes this settlement out of the usual situation. The settlement shows only the parties decided to compromise, drop the matter, and move on.

Zhang argues that Peterson's evidence in opposition to Zhang's anti-SLAPP motion was the same as Peterson's evidence in Peterson's motion for sanctions in the underlying lawsuit, which the court denied. Zhang reasons that, because he defeated the motion for sanctions, he therefore should have won his anti-SLAPP motion. This argument is a mere variant of his appeal to the interim adverse judgment rule, which we have discussed and rejected. Moreover, this argument errs by disregarding the difference between these two motions. To defeat Peterson's sanctions motions, Zhang faced a light evidentiary burden. (E.g., *Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1126.) Zhang did not need even the evidence to create a triable issue of fact. (*Ibid*.) By contrast, once Peterson fielded facts showing his case had minimal merit, Zhang's evidentiary burden on his anti-SLAPP motion was heavy. Zhang had to respond with evidence showing he could defeat Peterson *as a matter of law*. It was not enough for Zhang merely to controvert Peterson's evidentiary showing, for that would entitle Peterson to have a jury decide the factual disputes. (See *Monster, supra,* 7 Cal.5th at p. 788.)

In short, Peterson's sanctions motion had no bearing on proper analysis of Zhang's anti-SLAPP motion. The former placed only a *light* burden on Zhang, while the latter required Zhang to *overwhelm* Peterson as a matter of law. This argument fails.

Zhang argues about the significance of letterheads. He says Peterson issued some past tree arbitration rulings on Association letterhead. Peterson also signed these rulings on a signature line. Under this line were these words:

"CHARLES PETERSON

"PVHA Arbitrator"

Neither the letterheads nor the signature block text identified Peterson as an officer or director of the Association. The letterheads and signature blocks do not show Peterson owed Zhang a fiduciary duty.

Zhang discusses evidence about Peterson's firm name of "Stonebridge Mediation" and about the Association's retainer agreement with Peterson. Zhang also points to the fact the Association paid Peterson for his services. These proofs tend to show Peterson had a mediation firm separate from the Association. They do not suggest Peterson was an officer or director of the Association.

Zhang maintains the trial court erred in finding that Peterson was a "neutral arbitrator." This argument does not establish Peterson was an officer or director of the Association.

Zhang attacks the trial court finding that Peterson was "an independent contractor, not a director, officer or an employee." Zhang argues that the documents on which the trial court relied "do not disprove" Peterson's status as an officer of the

19

homeowners association.  This foray does not establish Peterson *was* a director or officer of the Association.

Zhang returns to the Association's webpage that included Peterson among the "Faces of [Palos Verdes Homes Association]." Under this "Faces" heading is a subheading in bold:  "**Board of Directors**."  We already have described this evidence in detail.

The trial court ruled, with our italics, that, while this website evidence "might establish probable cause to file the Underlying Action based on Peterson's status as an officer or director, *it does not explain Zhang's maintenance of the Underlying Action after the defendants' discovery responses refuting that allegation under oath*."

Zhang's opening brief recites this reasoning and then states, rather mysteriously, that "Zhang no longer needed this web page of [the Association] to argue that Peterson was at least an officer of [the Association] even though Peterson might not have been a director on the board."

Zhang's comment—that he "no longer needed" this evidence—does not respond to the trial court's reasoning.  This webpage evidence lost whatever probative value it had to Zhang once direct evidence refuted Zhang's claim that Peterson was an officer or director of the Association.  This direct evidence from Peterson and from the Association's attorney created a duty for Zhang to investigate authoritative sources to ensure his crucial supposition about Peterson's status had some kind of factual basis.  For instance, Zhang could have consulted the board president or other board members and simply asked whether Peterson was an officer or director of the association.  (Cf. *Collins v. Waters* (2023) 92 Cal.App.5th 70, 81 [purposeful efforts to

20

maintain plausible deniability are willful blindness, which is culpable].)

"[E]ven though an action may not be frivolous when it is filed, it may become so if later-acquired evidence refutes the findings of a prefiling investigation and the attorney continues to file papers supporting the client's claims. . . . Thus, a plaintiff's attorney cannot just *cling tenaciously* to the investigation he had done at the outset of the litigation and bury his head in the sand." (*Peake, supra*, 227 Cal.App.4th at p. 441, italics added and citations and internal quotation marks omitted.) Instead, the attorney must take into account the adverse party's evidence. (*Ibid*.)

In short, the trial court properly treated the website evidence. Zhang's *tenacious clinging* fails.

Zhang incorrectly claims the deposition of the Association's general counsel supported Zhang's anti-SLAPP motion. General counsel Croft testified unequivocally that Peterson was *not* a director or officer of the Association. Zhang ignores this clear testimony and asserts Croft's statement—that Peterson "was a hireling just like me"—shows Peterson *was* an officer. Zhang's interpretation of this transcript is unreasonable, as is this argument.

Zhang tells us that Peterson regularly attended Association board meetings, and that showed Peterson was a director or officer of the association. Zhang does not dispute the fact that all homeowners in the area who were members could attend these meetings. This evidence does not show Zhang's anti-SLAPP motion had merit.

Zhang argues Peterson was the "mastermind" behind the association's rejection of Zhang's tree-trimming application and

21

that Peterson acted in bad faith. These claims, whether true or not, could not establish Peterson owed Zhang a fiduciary duty. They do not undermine the order denying Zhang's anti-SLAPP motion.

In oral argument, Zhang reiterated his reliance on *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, which is not pertinent. As that opinion stressed repeatedly, that case involved undisputed evidence. (*Id.* at pp. 1433, 1448, 1450 & fn. 6, 1452 & fn. 7.) This case does not. Therefore a trier of fact must resolve the fact dispute in this case. (*Id.* at p. 1450.) Resolution via an anti-SLAPP motion here is improper.

Zhang also reiterated his citation of *Wilson*, which was, as mentioned above, the taproot for the interim adverse judgment rule. (*Wilson, supra,* 28 Cal.4th at p. 818.) We already have explained why the interim adverse judgment rule does not apply to this case.

In sum, Peterson produced valid evidence that Zhang lacked probable cause to continue his fiduciary-duty case against Peterson. Peterson's evidentiary showing satisfied element three.

2

To sustain his action for malicious prosecution, Peterson had to offer evidence on the fourth element: that Zhang sued him primarily for a purpose other than succeeding on the merits of the claim. (CACI No. 1501, element four.) The CACI distillation differs somewhat from the common law. The common law called this fourth element "malice," which is less helpful than the CACI formulation, because "malice" is a protean and hence mischievous term. (E.g., *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 [malice "may range anywhere from open

22

hostility to indifference"]; cf. *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 451 [malice in the context of malicious prosecution refers to an improper motive for bringing the prior action].)

Few litigants willingly admit they are suing for "a purpose other than succeeding on the merits of the claim," so the evidence on this element is commonly, and properly, circumstantial. The factfinder can infer this element when a party continues to prosecute an action after becoming aware the action lacks probable cause. (*Divine Food & Catering, LLC v. Western Diocese of the Armenian Church of North America* (2023) 92 Cal.App.5th 1048, 1070.)

That was the situation here. The trial court found Peterson satisfied this element: "At the very least, Peterson's evidence establishes malice based on Zhang's indifference to the overwhelming evidence given to him in discovery negating his allegation that Peterson was an officer or director of [the Association]."

In effect, the trial court inferred Zhang's subjective mental state was *recklessness*: Zhang had consciously disregarded a substantial and unjustifiable risk that Peterson was *not* an officer or director of the association and thus owed Zhang no fiduciary duty. (*People v. Freetown Holdings Co.* (2024) 100 Cal.App.5th 1195, 1211–1213 [explaining basis for recklessness standard in a tort case]; Model Pen. Code, § 2.02, subd. (2)(c) [defining recklessness with precision].) Zhang thus proceeded in the face of a substantial and unjustifiable risk that his lawsuit was baseless. For Zhang to continue to prosecute his case in the teeth of this awareness was ample proof he was pursuing "a

purpose other than succeeding on the merits of the claim." (CACI No. 1501, element four.)

Zhang's critique of this element of the trial court's analysis is unsuccessful.

In conclusion, the trial court was right to deny Zhang's groundless anti-SLAPP motion.

## DISPOSITION

We affirm the order, award costs to Peterson, and remand for further proceedings.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.